1  **KLEIN THOMAS LEE & FRESARD**
   Gregory P. Gilmer (SBN: 212067)
2  Email:  greg.gilmer@kleinthomaslaw.com
   Kristyn Wong (SBN: 346644)
3  Email:  kristyn.wong@kleinthomaslaw.com
   1920 Main Street, Suite 230
4  Irvine, CA 92614
   Office: (949) 676-4570
5
   Attorney for Defendant SACRAMENTO CDJR, LLC
6

7

8              **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

10

11 | REBEKA RODRIGUEZ,                    ) **CASE NO.:** 2:25-cv-8089
   |                                     ) *[Removed from Los Angeles County Superior*
12 |              Plaintiff,             ) *Court, Case No. 25STCV20947]*
   |                                     )
13 | vs.                                 ) *Assigned to:*
   |                                     ) *Magistrate Judge:*
14 | SACRAMENTO CDJR LLC, a              )
   | California entity, d/b/a            ) **NOTICE OF REMOVAL TO THE**
15 | WWW.SACSUPERSTORE.COM,              ) **UNITED STATES DISTRICT COURT**
   |                                     ) **FOR THE CENTRAL DISTRICT OF**
16 |              Defendant.             ) **CALIFORNIA - WESTERN DIVISION**
   |                                     ) **UNDER 28 U.S.C. §§ 1441(b) AND**
17 |                                     ) **1331-FEDERAL QUESTION;**
   |                                     ) **DECLARATION OF KRISTYN**
18 |                                     ) **WONG; EXHIBITS "A-B"**
   |                                     )
19 |                                     ) **JURY TRIAL DEMANDED**
   |                                     )
20 |                                     ) Action Filed: July 15, 2025
   |                                     )
21 |_____)

22         TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

23 CENTRAL DISTRICT OF CALIFORNIA:

24         Defendant Sacramento CDJR, LLC, pursuant to 28 U.S.C. §§ 1331, 1441, and

25 1446, hereby removes this case to this Court.  As set forth below, this Court has

26 subject matter jurisdiction under 28 U.S.C. § 1331 and 1367.

27 **I.    BACKGROUND**

28         1.    On July 15, 2025, Plaintiff Rebekah Rodriguez  filed  a  Complaint

                                    1

("Complaint" or "Comp.") known and numbered as *Rodriguez v. Sacramento CDJR LLC*, Case No. 25STCV20947, in the Superior Court of the State of California for the County of Los Angeles ("the State Court Action").

2.    Sacramento CDJR was served with process and a copy of the Complaint in the State Court Action on July 28, 2025.  No other pleadings have been filed, and no other process has been served.  A true copy of the Complaint in the State Court Action is attached as Exhibit A.

**A.    Allegations In The Complaint.**

3.    Plaintiff is a California resident who visited Defendant's website, sacsuperstore.com (the "Website") on an unidentified date.  *See* Comp., ¶¶ 1, 8, 27.

4.    Plaintiff alleges that, after visiting the Website that "Tracking Pixels" operated by data brokers Nexxen, LiveRamp, and PubMatic were loaded onto her device that captured information like IP addresses, browser type, operating systems, fonts, time zone, language and hardware IDs which created a "unique blue print of Plaintiff's device."  *Id.* at ¶¶ 4, 27.  She claims that the Tracking Pixels could associate this data with Plaintiff and link her activities across different devices, browsers, websites and sessions, all without her knowledge.  *Id.* at ¶ 27.  Plaintiff alleges that Defendant and the data brokers sold the data to third parties and used it to build consumer dossiers and target users with tailored ads.  *Id.* at ¶ 27.  Plaintiff says this occurred without her consent and is a "bait and switch" scheme that is highly offensive to a reasonable person.  *Id.* at ¶¶ 37, 38.

5.    Based on these allegations, Plaintiff asserts claims for: Violation of the Federal Wiretap Act, 18 U.S.C. § 2511 (Count I); Violations of the California Trap and Trace Law, Cal. Penal Code § 638.51 (Count II); and Intrusion Upon Seclusion (Count III).  *Id.* at ¶¶ 495-64.

6.    Among other things, Plaintiff seeks (i) actual and statutory damages; (ii) attorneys' fees and costs, and (iii) injunctive relief.  *Id.* at ¶¶ 54, 61; *see also id.* at *Prayer for Relief*, p. 13.

## II.    GROUNDS FOR REMOVAL

7.    "Federal-question jurisdiction is governed by the 'well pleaded complaint rule,'" which provides that federal jurisdiction exists . . . when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 (9th Cir. 2000). Here, in Count I, Plaintiff pleads that FCA US violated the Electronic Communications Privacy Act, 18 U.S.C. § 2511 by intercepting Plaintiff's electronic communications for the purpose of exploiting user data in violation of that federal statute.  Comp. ¶¶ 49-53.

8.    Because Plaintiff pleads a cause of action for violation of a federal statute, this Court has jurisdiction under 28 U.S.C. § 1331.

9.    The Court has supplemental jurisdiction over her state-law claims under 28 U.S.C. § 1367.

## III.    REMOVAL IS PROPER AND TIMELY

10.    This Notice of Removal is filed within thirty days of July 28, 2025, the date on which Sacramento CDJR, LLC was first served with a summons and the Complaint.  Thus, it is timely filed.  *See* 18 U.S.C. § 1446(b)(1).

11.    Sacramento CDJR, LLC will promptly file a copy of this Notice of Removal with the clerk of the Superior Court of the State of California, Los Angeles, and provide written notice of the removal to all counsel of record.

12.    The United States District Court for the Central District of California embraces the county and court in which Plaintiff filed this case.  *See* 28 U.S.C. § 84(c)(3).  Therefore, this action is properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

/ /

/ / /

/ / /

/ / /

WHEREFORE, the above-described action now pending against FCA US LLC in the Superior Court of the State of California, County of Los Angeles, is removed to the United States District Court for the Central District of California.

DATED:  August 27, 2025                          KLEIN THOMAS LEE & FRESARD

                                        By:    /s/ Kristyn Wong
                                                Gregory P. Gilmer
                                                Kristyn Wong
                                                Attorneys for Defendant
                                                SACRAMENTO CDJR, LLC

## DECLARATION OF KRISTYN WONG

I, Kristyn Wong, declare as follows:

1.    I am an attorney admitted to practice before the United States District Court, Central District of California. I am an attorney with Klein Thomas Lee & Fresard, attorneys of record for Sacramento CDJR LLC. I have personal knowledge of all the facts set forth herein, and if called upon to do so by the court, could and would testify competently thereto. As to those matters stated upon information and belief, I am informed and believe such matters to be true.

2.    This declaration is offered in support of Sacramento CDJR LLC Notice of Removal to the United States District Court for the Central District of California - Western Division Under 28 U.S.C. §§ 1441(b) and 1331 – Federal Question.

3.    Attached hereto as Exhibit "A" is a true and correct copy of the Complaint in the State Court Action served on July 28, 2025.

4.    Attached hereto as Exhibit "B" is a true and correct copy of the Proof of Service showing the summons was served on July 28, 2025.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of August, 2025 at Irvine, California.


/s/ Kristyn Wong
Kristyn Wong
Declarant

# EXHIBIT A

**Electronically FILED by
Superior Court of California,
County of Los Angeles
7/15/2025 11:53 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk**

1    PACIFIC TRIAL ATTORNEYS
     A Professional Corporation
2    Scott J. Ferrell, Bar No. 202091
     sferrell@pacifictrialattorneys.com
3    Victoria C. Knowles, Bar No. 277231
     vknowles@pacifictrialattorneys.com
4    4100 Newport Place Drive, Ste. 800
     Newport Beach, CA  92660
5    Tel: (949) 706-6464
     Fax: (949) 706-6469
6
7    Attorneys for Plaintiff

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **FOR THE COUNTY OF LOS ANGELES**

10

11   REBEKA RODRIGUEZ,                        Case No.  25STCV20947

12           Plaintiff,

13           v.

14   SACRAMENTO CDJR LLC, a California entity,   **COMPLAINT FOR:**
     d/b/a WWW.SACSUPERSTORE.COM,
15                                              **VIOLATION OF THE FEDERAL WIRETAP
                                                ACT; THE CALIFORNIA INVASION OF
16                                              PRIVACY ACT; AND RELATED COMMON
                                                LAW CLAIMS**
17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

1.    This case involves an outrageous privacy "bait and switch" scheme: Defendant lures individuals seeking to purchase or service a vehicle to **sacsuperstore.com** (the Website) by assuring them that "Sacramento CDJR and each of our subsidiaries and affiliated entities under common ownership and control … respects your privacy and the information that you have entrusted to us." *See* https://www.sacsuperstore.com/tools/complyauto/privacy-policy.htm (last accessed July 2025).

2.    In reality, Defendant secretly allows notorious data brokers to (1) intercept communications from visitors and (2) use those communications to compile and sell deeply personal details about visitors to the highest bidders. The predictable result is a grave intrusion upon visitor privacy.

3.    The CEO of the world's largest data broker recently bragged about the suffocating extent to which data brokers secretly track internet users.  Referring to a typical web user as "Lola," he boasts: "***We know who she is, what she watches, what she reads, and who she lives with.  Through the power of connected identity, we also know who she follows on social media, what she buys online and offline, where she buys, when she buys, and more importantly, why she buys.  We know that Lola has two children and that her kids drink lots of premium fruit juice. We can see that the price of the SKU she buys has been steadily rising on her local retailer's shelf. We can also see that Lola's income has not been keeping pace with inflation.***"[1]

4.    Putting profits over privacy, Defendant has partnered with three data brokers—Nexxen, LiveRamp, and PubMatic—to secretly install "Tracking Pixels" on its Website.  Defendant secretly allowed these three companies to intercept the communication for the tortious purpose set forth below without Plaintiff's knowledge or consent. In doing so, Defendant has violated California Penal Code § 638.51.

## JURISDICTION AND VENUE

5.    As a Court of general jurisdiction, This Court has jurisdiction over all matters presented to it per the mandates of the California Constitution.

6.    Venue is proper in this County under CCP Section 395.

---

[1]    Lucas Ropek, ***Data Broker Brags About Having Highly Detailed Personal Information on Nearly All Internet Users***, March 15 2025 (Gizmodo.com).

7.    Defendant is subject to jurisdiction because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."

## PARTIES

8.    Plaintiff is a resident and citizen of California.

9.    Defendant is a California-based company that markets vehicles and vehicle servicing to customers in California via its website.

## FACTUAL ALLEGATIONS

**Defendant Secretly Partners with Data Brokers Nexxen, LiveRamp, and PubMatic to Track Visitors and Sell Their Personal Information To the Highest Bidders.**

10.    Defendant operates the Website.

11.    Defendant has installed on its Website a spyware pixel created by Nexxen to identify Website visitors (the "Nexxen Tracking Pixel").

12.    According to Nexxen, the Nexxen Tracking Pixel is "a transparent graphic image that is placed on a web page and allows for the collection of information regarding the use of the web page that contains the tracking pixel."  *See* https://nexxen.com/privacy-policy/ (last accessed July 2025).

13.    The Nexxen Tracking Pixel gathers data about visitor interaction with a website by tracking signals generated by website visitor actions like page visits, purchases, and video views. Nexxen combines that data with its proprietary algorithm to track visitors.  *See* https://nexxen.com/nexxen-discovery/ (describing same) (last downloaded July 2025).   Participating websites then cater their advertisements based on a collective knowledge of the user's actions.  *Id.*

14.    When Defendant embedded the Nexxen Tracking Pixel it allowed Nexxen to covertly monitor visitor behavior in real time without the visitor's knowledge or consent, including Plaintiff.

15.    Nexxen is a data broker registered with the State of California Department of Justice. *See* https://oag.ca.gov/data-broker/registration/573332  (last accessed July 2025).

16.    As shown by the image below identifying the Nexxen tracking scripts operating on Defendant's website, the Nexxen Tracking Pixel (1) begins to collect information the moment a user lands on the Website before any pop-up or cookie banner advises users of the invasion or seeks their

consent; and (2) requests and transmits other identifying personal information to Nexxen that allows Nexxen to link a user's behavior on Defendant's website to the visitor's social media accounts:



17.    Defendant has also installed on its Website a spyware pixel called the "LiveRamp Tracking Pixel" to identify and spy on visitors to its website.  According to LiveRamp, the LiveRamp Tracking Pixel "[i]mprove[s] the quality and richness of your first-party data."  *See* https://liveramp.com/solutions/consumer-data-strategy/ (last accessed July 2025).

18.    The LiveRamp Tracking Pixel gathers data about visitor interaction with a website by tracking signals generated by website visitor actions like page visits, purchases, and video views. LiveRamp combines that data with its proprietary algorithm to track visitors.  *See* https://liveramp.com/partners/ (describing same) (last downloaded July 2025).  Participating websites then cater their advertisements based on a collective knowledge of the user's actions.  *Id.*

19.    When Defendant embedded the LiveRamp Tracking Pixel, it allowed LiveRamp to covertly monitor visitor behavior in real time without the visitor's knowledge or consent, including Plaintiff.

20.    LiveRamp is a data broker registered with the State of California Department of Justice. *See* https://oag.ca.gov/data-broker/registration/560496 (last accessed July 2025).

21.    As shown by the image below identifying the LiveRamp tracking scripts operating on Defendant's website, the LiveRamp Spyware (1) begins to collect information the moment a user lands on the Website before any pop-up or cookie banner advises users of the invasion or seeks their consent; and (2) requests and transmits other identifying personal information to LiveRamp that allows LiveRamp to link a user's behavior on Defendant's website to the visitor's social media accounts:

22.     Defendant has also installed on its Website a spyware pixel called the "PubMatic Tracking Pixel" to identify and spy on visitors to its website. According to PubMatic: "As one of the world's leading scaled digital advertising platforms, PubMatic continues to innovate to offer more transparent advertising solutions to publishers, media buyers and data owners, allowing them to harness the power and potential of the open internet to drive better business outcomes." *See* https://PubMatic.com/about-us/ (last accessed July 2025).

23.     The PubMatic Tracking Pixel gathers data about visitor interaction with a website by tracking signals generated by website visitor actions like page visits, purchases, and video views. PubMatic combines that data with its proprietary algorithm to track visitors. *See* https://PubMatic.com/products/connect-for-publishers/ (describing same) (last downloaded July 2025). Participating websites then cater their advertisements based on a collective knowledge of the user's actions. *Id.*

24.     When Defendant embedded the PubMatic Tracking Pixel, it allowed PubMatic to covertly monitor visitor behavior in real time without the visitor's knowledge or consent, including Plaintiff.

25.     PubMatic is a data broker registered with the State of California Department of Justice. *See* https://oag.ca.gov/data-broker/registration/186702 (last accessed July 2025).

26.     As shown by the image below identifying the Pubmatic tracking scripts operating on Defendant's website, the Pubmatic Tracking Pixel (1) begins to collect information the moment a user lands on the Website before any pop-up or cookie banner advises users of the invasion or seeks their consent; and (2) requests and transmits other identifying personal information to PubMatic that allows PubMatic to link a user's behavior on Defendant's website to the visitor's social media accounts:



27.    The Tracking Pixels are not merely an analytics tool—they are powerful surveillance mechanisms designed to identify and follow users across devices, sessions, and even websites, using a technique known as cross-device attribution. Here's how it works: **First**, when Plaintiff visited the website, the Tracking Pixels were secretly loaded and covertly captured numerous device-specific attributes (including IP address, browser type and version, operating system, screen resolution, fonts and plugins, time zone, language, and hardware IDs). These data points were used to create a unique fingerprint of Plaintiff's device. **Second**, once the Tracking Pixels collected this fingerprint and associated it with Plaintiff, it was able to link Plaintiff's activity across different devices (e.g., laptop → mobile phone), different browsers (e.g., Chrome → Safari), and different websites and sessions (e.g., visiting news site → shopping site) through both probabilistic and deterministic methods. **Third**, the Tracking Pixels were invisible to Plaintiff, as there was no visible indication that the Tracking Pixels were present, and Plaintiff was not informed of the pixels or their purpose and there was no obvious opt-out mechanism on the website. **Fourth**, Defendant and the data brokers collected and linked this cross-device data, and then sold it to third parties (advertisers, insurers, political campaigns, etc.), used to build consumer dossiers, including interests, income, health, and habits, and fed into real-time bidding systems to target users with tailored ads.

28.    In short, the use of Tracking Pixels on the Website is a surreptitious and invasive surveillance practice. Through cross-device attribution, Tracking Pixels enable data brokers and their clients to secretly follow Plaintiff across Plaintiff's digital life, without consent, visibility, or meaningful choice. In the context of privacy law, this practice is not only deceptive—it is profoundly intrusive and highly offensive to a reasonable person, especially when conducted under Defendant's false pretense to protect and respect Plaintiff's privacy, as described above.

29.     According to the esteemed Brennan Center for Justice, data brokers like Nexxen, LiveRamp, and PubMatic are "the main purveyors of surveillance capitalism" that "collect, assemble, and analyze personal information to create detailed profiles of individuals, which they then sell to "financial institutions and insurance firms…Advertising companies… predatory loan companies, stalkers, and scammers…foreign actors…and law enforcement and other government agencies including the FBI and the IRS."). *See*     https://www.brennancenter.org/our-work/research-reports/closing-data-broker-loophole (last accessed July 2025).

30.     Plaintiff visited the Website in the last year to shop for a vehicle and was unaware of the secret spyware being used to surveil visitors and monetize their personal information.  Plaintiff is both (1) genuinely interested in the goods, services, and information available on Defendant's Website, and (2) a consumer privacy advocate who works as a "tester" to ensure that companies abide by the privacy obligations imposed by California law.  The Ninth Circuit recently made exceptionally clear that it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes, and that Courts must not make any impermissible credibility or standing inferences against them.  *Langer v. Kiser*, 57 F.4th 1085, 1095 (9th Cir. 2023).

**B.     The Nexxen, LiveRamp, and PubMatic Tracking Pixel Spywares are Trap and Trace Devices.**

31.     Under the California Invasion of Privacy Act (CIPA), it is unlawful to use a "trap and trace" device without consent. The Tracking Pixels—when used to collect and transmit information about a website visitor's communications—fall squarely within the statutory definition of such a device.

32.     CIPA § 638.50(c) defines a "trap and trace device" as: "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication."

33.     CIPA makes it unlawful to install or use such a device without a court order or proper consent, even on a private communication system.

34.     The Tracking Pixels are a "process" that captures routing and addressing information. As shown above, it captures and transmits the IP address of the originating device, device identifiers

such as cookies, device IDs, or browser fingerprints, URL referrer paths, headers, and session identifiers, and other dialing, routing, addressing, and signaling information that identifies the source of the user's electronic communication.

35.    This data is the very type of "signaling information" contemplated by CIPA's definition of a trap and trace device. Just like a telephone trap and trace system captures the originating number, the Tracking Pixels identify the originating digital sender—Plaintiff—through the routing and addressing metadata automatically included in the HTTP(S) request. The same principle applies here: the Tracking Pixels are a 21st century analog to a telephone trap and trace device—monitoring the metadata of electronic communications without consent.

36.    Defendant did not obtain Plaintiff's express or implied consent to be subjected to fingerprinting and de-anonymization via the Tracking Pixels for the purposes of fingerprinting and de-anonymization, nor did Defendant obtain a Court order allowing it to install the Tracking Pixels.

37.    CIPA imposes civil liability and statutory penalties for the installation of trap and trace software without a court order. Cal. P. Code § 637.2; s*ee also Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024).

**C.    Defendant's Conduct is Highly Offensive To A Reasonable Person.**

38.    Defendant's "bait and switch" scheme—luring visitors to its Website by falsely promising that it will safeguard their privacy while secretly partnering with notorious data brokers to secretly track each visitor and sell their private information to the highest bidders—is highly offensive to a reasonable person for at least five reasons. **First**, it breaches trust and expectations—Defendant explicitly promised to protect Plaintiff's privacy, but secretly used the Tracking Pixels in direct contravention of its explicit assurances. **Second**, it involves deception because Defendant promises one thing but does the opposite. That kind of dishonesty makes the conduct more offensive than ordinary tracking because it undermines autonomy and consent—cornerstones of digital privacy. **Third**, it occurs in a private and sensitive setting. **Fourth**, it enables unwanted third-party surveillance by allowing cross-site profiling and targeted advertising without Plaintiff's consent—something most people find invasive when done in secret. **Fifth**, it violates established privacy norms that companies will be transparent about tracking, obtain meaningful consent, and honor their privacy policies.

39.      Defendant's conduct creates a genuine likelihood of serious harm to Plaintiff.  The personal information Defendant surreptitiously harvested via the Tracking Pixels includes name, contact information, location data, browsing behavior, device fingerprints, and interests. This type of information can be—and has been—used for identity theft, targeted harassment, and manipulative advertising. Data brokers purchasing this information can assemble comprehensive profiles to discriminate, exploit, or endanger users, particularly vulnerable populations such as women, minors, and individuals seeking health services.  The danger is not abstract: the FTC has warned that data sold to third parties may be used to expose sensitive locations like domestic violence shelters or reproductive clinics, as well as to facilitate stalking or physical tracking. Such practices impose serious privacy and safety risks, not mere discomfort.

40.      Cross-device attribution is a technique used by data brokers and advertisers to link a person's activity across different devices—such as their phone, laptop, tablet, or smart TV. This means that even if someone switches from browsing on their phone to using a laptop, the data broker can still identify them as the same person.

41.      Tracking pixels, which are tiny pieces of code embedded in websites or emails, are key to this. They quietly collect information like IP address, browser type, screen resolution, and behaviors like clicks or time spent on a page. When this data is combined with third-party data or identifiers (such as email hashes or cookies), it becomes possible to follow the user across multiple devices without their knowledge.

42.      Lack of consent, visibility, or choice is a type of tracking that happens behind the scenes. Users aren't shown any clear notice that cross-device tracking is happening. Often, even if privacy policies mention "personalized ads" or "analytics," they fail to disclose the true extent of this tracking, nor do they offer real choices (like opt-outs that actually work). That's why this practice has been criticized by regulators and privacy advocates as deceptive.

43.      Courts and regulators (like the Federal Trade Commission and state Attorneys General) have increasingly recognized that undisclosed or misleading tracking practices—especially those that span across a person's devices and online life—are not just deceptive, but highly invasive.

44.      This conduct is especially offensive when coupled with false privacy promises that

- 9 -
COMPLAINT

Defendant will protect and respect user privacy. Courts have found that misleading consumers into thinking their privacy is respected—while secretly undermining that very privacy—is especially egregious and offensive.

45.     The degree and setting of Defendant's intrusion is particularly severe—what sets Defendant's conduct apart is not just the nature of the information collected, but the context in which the intrusion occurred. The tracking took place in a purportedly trusted setting—Defendant's own corporate website—which explicitly assured Plaintiff that Plaintiff's privacy would be respected. Instead, Defendant implemented hidden surveillance code that began tracking Plaintiff without disclosure or authorization.

46.     Defendant's motives and objectives were both deceptive and exploitative: the purpose of the intrusion further supports its offensiveness. Defendant did not track users for benign analytics or internal operations. Rather, Defendant partnered with data brokers known for trafficking in intimate and geolocation data—and did so to profit off of Plaintiff's personal information. This is not an isolated lapse in oversight; it is a deliberate business strategy premised on deception, surveillance, and commodification of user trust. Secretly surveilling users to profit from the sale of their personal data—while falsely promising not to—is the very definition of manipulative and predatory conduct.

47.     There are no legitimate or countervailing interests or social norms that render the intrusion inoffensive. **First**, the data at issue—such as real-time location, unique identifiers, or finance-related browsing—is highly sensitive and context-dependent. **Second**, users cannot meaningfully consent to a practice they are never told about, especially when they are affirmatively misled. Moreover, there is no legitimate business or social interest in falsely promising privacy protections while secretly violating them. The only "interest" advanced by Defendant is financial profit derived from deception—an interest that cannot render the intrusion inoffensive under state and federal law.

48.     The intrusion is "highly offensive." Taken together, the factors articulated by California courts—the severity of the intrusion, the deceptive setting, the potential for serious harm, the exploitative motive, and the lack of any countervailing justification—all weigh heavily in favor of a finding that the intrusion was highly offensive.

## II.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violation of the Federal Wiretap Act

### (18 U.S.C. § 2511)

49.   The Tracking Pixels installed on Defendant's Website were used to intercept the contents of communications between Plaintiff and the Website in real time, including HTTP requests, URLs visited, and other metadata exchanged as part of Plaintiff's interactions with the site. These communications constitute "electronic communications" under 18 U.S.C. § 2510(12).

50.   Defendant and/or its agents intentionally intercepted, or procured the interception of, these electronic communications using the Tracking Pixel technology, without Plaintiff's knowledge or consent.

51.   The interception occurred contemporaneously with the transmission of the communication, satisfying the "in transit" requirement under the Wiretap Act.

52.   No exception under 18 U.S.C. § 2511(2)(d) applies because Plaintiff did not consent to the interception, and Defendant exceeded any purported authorization by misrepresenting the nature of the data collection and the identity of the third-party recipients.

53.   Defendant acted with a tortious and unlawful purpose when it enabled and permitted third-party data brokers to intercept Plaintiff's electronic communications through the use of Tracking Pixels embedded on Defendant's website. Under 18 U.S.C. § 2511(2)(d), even if one party to a communication consents, the Wiretap Act is violated if the interception is made for the purpose of committing any criminal or tortious act. Courts have recognized that surreptitious data collection in violation of privacy rights can satisfy this "tortious purpose" standard. In *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 607 (9th Cir. 2020), the Ninth Circuit held that Facebook's interception of browsing activity via tracking technologies could constitute a violation of the Wiretap Act where the conduct was undertaken for the purpose of violating users' privacy rights, such as by committing the tort of intrusion upon seclusion. Here, Defendants' facilitation of third-parties' interception—despite promising to protect user privacy—was done with the purpose of enabling commercial exploitation of user data in violation of California common law privacy rights, including

1  intrusion upon seclusion. This renders the interception unlawful under § 2511(2)(d).

2      54.    As a result of this unlawful interception, Plaintiff is entitled to statutory damages under

3  18 U.S.C. § 2520, including the greater of actual damages or statutory damages of $100 per day per

4  violation or $10,000, punitive damages, attorney's fees, and equitable relief.

5                              **SECOND CAUSE OF ACTION**

6                        **Violations of the California Trap and Trace Law**

7                              **Cal. Penal Code § 638.51**

8      55.    California's Trap and Trace Law is part of the California Invasion of Privacy Act

9  ("CIPA") codified at Cal. Penal Code 630, *et. seq.*

10     56.    CIPA was enacted to curb "the invasion of privacy resulting from the continual and

11 increasing use of" certain technologies determined to pose "a serious threat to the free exercise of

12 personal liberties."   CIPA extends civil liability for various means of surveillance using technology,

13 including the installation of a trap and trace device.

14     57.    A "trap and trace device" as "a device or process that captures the incoming electronic

15 or other impulses that identify the originating number or other dialing, routing, addressing, or signaling

16 information reasonably likely to identify the source of a wire or electronic communication, but not the

17 contents of a communication."   Cal. Penal Code § 638.50(c).

18     58.    California Penal Code § 638.51(a) provides that "a person may not install or use…a trap

19 and trace device without first obtaining a court order…."

20     59.    Defendant uses a trap and trace process on its Website by deploying the Tracking Pixels

21 on its Website because they capture routing, addressing and/or other signaling information of website

22 visitors, including Plaintiff.

23     60.    Defendant did not obtain consent from Plaintiff before using trap and trace technology

24 to identify users of its Website and has violated section 638.51 and did not obtain a court order to do so.

25     61.    CIPA imposes civil liability and statutory penalties for violations of section 638.51.  Cal.

26 Penal Code § 637.2.

27                              **THIRD CAUSE OF ACTION**

28                        **California Intrusion Upon Seclusion**

62.     Defendant intentionally intruded upon the private affairs, concerns, and seclusion of Plaintiff by improperly accessing Plaintiff's personal information and using it for improper purposes, including by partnering with data brokers to sell Plaintiff's private information to the highest bidder and by targeting Plaintiff with behavioral advertising.

63.     Defendant's intrusions upon the private affairs, concerns, and seclusion of Plaintiff has been substantial and would be highly offensive to a reasonable person and constitute an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of website visitors, centuries of common law, state and federal statutes and regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, and the penalties imposed by the FTC and other regulatory bodies.

64.     Plaintiff did not consent to Defendant's intrusions.  Indeed, as shown above, Defendant promised that it would protect Plaintiff's privacy.

**PRAYER**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.     Actual and statutory damages;

2.     Reasonable attorneys' fees and costs;

3.     An injunction to prevent the unlawful conduct alleged above; and

4.     All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated:  July 15, 2025                          PACIFIC TRIAL ATTORNEYS, APC

                                               By: _____
                                               Scott J. Ferrell

# EXHIBIT B

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(name and Address)* | FOR COURT USE ONLY |
|---|---|
| SCOTT J. FERRELL, (SBN: 202091) VICTORIA C. KNOWLES (SBN: 277231) PACIFIC TRIAL ATTORNEYS A PROFESSIONAL CORPORATION 4100 NEWPORT PLACE DRIVE, SUITE 800 NEWPORT BEACH, CA 92660 | **Electronically FILED by Superior Court of California, County of Los Angeles 8/07/2025 8:19 AM David W. Slayton, Executive Officer/Clerk of Court, By P. Yap, Deputy Clerk** |

TELEPHONE NO.: (949) 706-6464        FAX NO. *(Optional):* (949) 706-6469
E–MAIL ADDRESS *(Optional)* : sferrell@pacifictrialattorneys.com
ATTORNEY FOR *(Name):* PLAINTIFF

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 111 N. HILL ST.
MAILING ADDRESS:
CITY AND ZIP CODE: LOS ANGELES, CA 90012
BRANCH NAME: LOS ANGELES, CA 90012

| | |
|---|---|
| PLAINTIFF/PETITIONER: REBEKA RODRIGUEZ | CASE NUMBER: **25STCV20947** |
| DEFENDANT/RESPONDENT: SACRAMENTO CDJR LLC, a California entity, d/b/a WWW.SACSUPERSTORE.COM | |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: 1219214JR |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of :
   - a.☒ Summons
   - b.☒ Complaint
   - c ☒ Alternative Dispute Resolution (ADR) package
   - d ☒ Civil Case Cover Sheet *(served in complex cases only)*
   - e ☐ cross-complaint
   - f. ☒ other *(specify documents):* Civil Case Cover Sheet Addendum and Statement of Location ; FIRST AMENDED GENERAL ORDER; PEREMPTORY CHALLENGE TO JUDICIAL OFFICER; Notice of Case Assignment ; NOTICE OF CASE MANAGEMENT CONFERENCE; Voluntary Efficient Litigation Stipulations Package ; Order Pursuant to CCP 1054 (a), Extending Time to Respond by 30 Days When Parties Agree to Early Organizational Meeting Stipulation

3. a. Party served: *(specify name of party as shown on documents served):*
   SACRAMENTO CDJR LLC, a California entity, d/b/a WWW.SACSUPERSTORE.COM
   b. Person served (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made)*(specify name and relationship to the party named in item 3a):*
   Robert W. Thompson, Agent for Service of Process

4. Address where the party was served: 2601 MAIN ST., SUITE 800
   IRVINE, CA  92614

5. I served the party *(check proper box)*
   - a. ☐ **by personal service**. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*      (2) at: *(time)*
   - b. ☒ **by substituted service**. On *(date):* 07/28/2025    at: *(time)* 2:22 pm . I left the documents listed in item 2 with or in the presence of (name and title or relationship to the person indicated in item 3): Myra Espinoza, Authorized Person for service / Admin assistant (Hispanic female, 5'5", 120 lbs, 30 years old, brown hair)
     - (1) ☒ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
     - (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
     - (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
     - (4) ☒ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on (date): 07/28/2025 (city):LOS ANGELES, CA  **or** ☐ a declaration of mailing is attached.
     - (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure § 417.10

| PLANTIFF/PETITIONER:  REBEKA RODRIGUEZ | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  SACRAMENTO CDJR LLC, a California entity, d/b/a WWW.SACSUPERSTORE.COM | **25STCV20947** |

5.  c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) (date):                                    (1) (city):
   (3) ☐  with two copies of the *Notice and Acknowledgment of Receipt* (form 982(a)(4)) and a postage-paid return
       envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt *(form 982(a)(4).)*
       (Code Civ. Proc., § 415.30.)
   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐  **by other means** (specify means of service and authorizing code section):
        ☐     Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant
   b. ☐ as the person sued under the fictitious name of (specify):
   c. ☒ on behalf of (specify): SACRAMENTO CDJR LLC, a California entity, d/b/a WWW.SACSUPERSTORE.COM
      under the following Code of Civil Procedure section:
      ☐ 416.10 (corporation)            ☐ 415.95 (business organization, form unknown)
      ☐ 416.20 (defunct corporation)         ☐ 416.60 (minor)
      ☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)
      ☐ 416.40 (association or partnership)      ☐ 416.90 (authorized person)
      ☐ 416.50 (public entity)            ☐ 415.46 (occupant)
                              ☒ other:LLC

7.  **Person who served papers**
   a.   Name: ANTHONY ARCHE
   b.   Address: **800 W. 1ST STREET, SUITE 200-B**
        **LOS ANGELES, CALIFORNIA 90012**
   c.   Telephone number: **(213) 607-9000**
   d.   The fee for service was: $ 104.00
   e.   I am:



USA Legal Network

      (1) ☐ not a registered California process server.
      (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
      (3) ☒ registered California process server:
          (i)  ☐ owner  ☐ Employee  ☒ independent contractor.
          (ii) ☒ Registration No.:PSC 2770
          (iii) ☒ County: ORANGE

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
    Or
9. ☐ I am a California sherif or marshal and I certify that the foregoing is true and correct.

Date: 07/29/2025

ANTHONY ARCHE
_____            _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHALL)                (SIGNATURE)

Page 2 of 2

1

**PROOF OF SERVICE**
F.R.C.P. Rule 5(b)(2)

2

3

*STATE OF CALIFORNIA, COUNTY OF ORANGE*

I am employed in the County of Orange, State of California. I am over the age of 18
and not a party to the within action; my business address is 1920 Main Street, Suite
230, Irvine, CA 92614.

4

5

6

On August 27, 2025, I served the foregoing document described as **NOTICE OF
REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION UNDER
28 U.S.C. §§ 1441(b) AND 1331-FEDERAL QUESTION; DECLARATION OF
KRISTYN WONG; EXHIBITS "A-B"** on all interested parties in this action by
transmitting an electronic copy as follows:

7

8

9

10

Scott J. Ferrell, Esq.               Attorneys for Plaintiff
Victoria C. Knowles, Esq.            REBEKA RODRIGUEZ
PACIFIC TRIAL ATTORNEYS

11

12

A Professional Corporation          Tel: (949) 706-6464
4100 Newport Place Drive, Ste. 800  Fax: (949) 706-6469
Newport Beach, CA 92660             Email: sferrell@pacifictrialattorneys.com

13

vknowles@pacifictrialattorneys.com

14

15

☐   **BY MAIL (CCP §1013(a) and §2015.5):** I served the documents by placing
the envelope for collection and mailing following our ordinary business
practices. I am readily familiar with this business's practice for collecting and
processing documents for mailing. On the same day the document is placed
for collection and mailing, it is deposited in the ordinary course of business
with the United States Postal Service in a sealed envelope with postage fully
prepaid. I am aware that on motion of the party served, service is presumed
invalid if the postal cancellation date or postage date is more than **1** day after the
date of deposit for mailing in affidavit.

16

17

18

19

20

☒   **BY ELECTRONIC SERVICE (CCP 1010.6.(b)(6):** I transmitted the
foregoing document(s) to the person(s) specified above electronically.

21

22

Executed on August 27, 2025, at Lakewood, California.

23

☒   (Federal) I declare that I am employed in the office of a member of the bar of
this court at whose direction the service was made.

24

25

26

_____
Samie Long

27

28

6