**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

**UNITED STATE DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

REBEKA RODRIGUEZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SACRAMENTO CDJR LLC, a California limited liability company, d/b/a WWW.SACSUPERSTORE.COM,

Defendant.

Case No. 2:25-cv-08089-DMG-E

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO SACRAMENTO CDJR LLC'S MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

[Declarations of Rebeka Rodriguez and Scott J. Ferrell filed concurrently herewith; [Proposed] Order lodged concurrently herewith]

Date: January 9, 2026
Time: 9:30 a.m.
Courtroom: 8C
Judge: Hon. Dolly M. Gee

# TABLE OF CONTENTS

**Page(s)**


I. ARGUMENT ..... 1

A. The Motion to Compel Arbitration Should Be Denied. ..... 1

1. Applicable Standard ..... 1

2. Defendant Has Provided No Evidence that Plaintiff Saw or Read Its Privacy Policy During Plaintiff's Visit to Its Website. ..... 1

3. Defendant Has Failed to Satisfy Its Burden of Showing Inquiry Notice. ..... 3

4. The "Context of the Transaction" Factor Supports Plaintiff's Position. ..... 6

5. Assuming *Arguendo* that a Valid Privacy Policy Is Otherwise Enforceable Against Plaintiff, Defendant Waived Its Right To Do So. ..... 7

B. The FAC Alleges a Violation of Section 638.51 of the Penal Code. ..... 8

1. Numerous Federal District Courts Have Recognized that Similar Third-Party Software Technology on Websites Is Either a "Pen Register" or a "Trap and Trace Device" ..... 8

2. The Website's Spyware Qualifies as a "Device or Process" Because It Constitutes "Software that Identifies Consumers, Gathers Data, and Correlates that Data." ..... 9

3. The IP Addresses Collected by the Website's Spyware Qualify as "Addressing Information." ..... 11

4. IP Addresses Are "Transmitted by an Instrument or Facility From Which a Wire or Electronic Communication Is Transmitted." ..... 12

5. The Court Must Follow the California Supreme Court's Statutory Interpretation of CIPA that Gives Greater Protection to Privacy Interests. .......... 14

6. The Common Law Rule of Lenity Does Not Apply Here. .......... 15

7. Defendant's Argument that Section 638.51 of the Penal Code Should Be Interpreted to Exclude Defendant's Third-Party Cookies Because Such Cookies Copy the Content of the Communications Between the Website and Plaintiff and Other Users Is Wrong. .......... 16

8. The FAC Alleges that Third-Party Cookies Were Placed on Plaintiff's Browser or Device. .......... 17

9. There Is No Party Exception Under Section 638.51. .......... 17

C. Plaintiff's Wiretap Act Claim Is Plausibly Alleged. .......... 18

D. Plaintiff's Intrusion Upon Seclusion Claim Is Plausibly Alleged. .......... 18

**CERTIFICATE OF COMPLIANCE** .......... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ariz. Elec. Power Co-Op., Inc. v. Berkeley*,
59 F.3d 988 (9th Cir. 1995) .......... 15

*Armstrong v. Michaels Stores, Inc.*,
59 F.4th 1011 (9th Cir. 2023) .......... 7

*Barker v. Riverside County Office of Education*,
584 F.3d 821 (9th Cir. 2009) .......... 10

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) .......... 20

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 1, 6

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 19

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 19

*Camplisson v. Adidas America, Inc.*,
- F. Supp. 3d -, 2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) .......... 8, 14, 20

*Casillas v. Six Flags Enter. Corp.*,
- F. Supp. 3d -, 2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) (Marshall, J.) .......... 8, 12

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 1, 6

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) (Castillo, Mag. J.) .......... 8

*Deivaprakash v. Condé Nast Digital*,
- F. Supp. 3d -, 2025 WL 2541952 (N.D. Cal. Sept. 4, 2025) .......... 8, 15, 20

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 20

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........................................8, 14, 15

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........................................ *passim*

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal July 14, 2025) ........................................8, 13, 14

*Garon v. Keleops USA, Inc.*,
2025 WL 2522374 (N.D. Cal. Sept. 2, 2025) ........................................ *passim*

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)........................................ 9, 10, 11, 19

*Heiting v. FKA Distributing Co. LLC*,
2025 WL 1430663 (C.D. Cal. May 15, 2025) (Vera, J.)....................................8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021).............18, 20

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)........................................15, 19

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)........................................................19

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)........................................................10

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. Aug. 6, 2025).............................. 8, 15, 16, 17

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ......................................................................11

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ........................................................................1

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)........................................................11

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ...................................................19

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ....................................................14

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ..................................................17

*Lesh v. Cable News Network, Inc.*,
2025 WL 563358 (S.D.N.Y. Feb. 20, 2025) ..................................... 8, 10, 11, 12

*Matera v. Google Inc.*,
2016 WL 200619 (N.D. Cal. Aug. 12, 2016) (Koh, J.) ....................................15

*Mirmalek v. Los Angeles Times Comms. LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........................................8, 10, 11

*Mitchener v. Curiositystream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ....................................................17

*Moody v. C2 Educ. Systems Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) (Klausner, J.) ....................................8, 9

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) ..........................................................................................7

*Morrison v. Yippee Entertainment, Inc.*,
2025 WL 2389424 (9th Cir. Aug. 18, 2025) ......................................................6

*Newirth by and through Newirth v. Aegis Senior Communities, LLC*,
931 F.3d 935 (9th Cir. 2019) .........................................................................7, 8

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......................................................................3, 6

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .........................................................................1, 6

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ...........................................................................6

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,
884 F.3d 812 (9th Cir. 2018) .........................................................................15

*Riganian v. Liveramp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ..................................................... *passim*

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ........................................19

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) (Klausner, J.) ..........................................8

*Sanchez v. Maggy London Int'l Ltd.*,
2025 WL 3097931 (S.D. Cal. Nov. 6, 2025) ........................................3

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) ........................................10

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........................................ *passim*

*Singh v. Adobe Inc.*,
2025 WL 2197142 (N.D. Cal. Aug 1, 2025) (Corley, J.) ........................................6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................11

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........................................11

*United States v. Staves*,
383 F.3d 977 (9th Cir. 2004) ........................................19

*Wright v. Truecare Prop. Holdings, LLC*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) ........................................8, 10, 11

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ........................................8, 10

**California Cases**

*Cruz v. Tapestry, Inc.*,
113 Cal. App. 5th 943 (2025), *as modified* (Aug. 27, 2025) ........................................6

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........................................15

*Forest E. Olson, Inc. v. Superior Court*,
63 Cal. App. 3d 188 (1976) ........................................18

*Kight v. CashCall, Inc.*,
200 Cal. App. 4th 1377 (2011) ........................................................18

*Neary v. Regents of the University of California*,
3 Cal.4th 273 (1992) ........................................................9, 17

*People v. Avery*,
27 Cal.4th 49 (2002) ........................................................15

*People v. Braden*,
14 Cal.5th 791 (2023) ........................................................15, 16

*People v. Superior Court*,
70 Cal. 2d 123 (1969) ........................................................17

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........................................................15

*Sanders v. American Broadcasting Companies, Inc.*,
20 Cal. 4th 907 (1999) ........................................................20

*Sellers v. Just Answer LLC*,
73 Cal. App. 5th 444 (2021), *rev. denied*, No. S273056 (Apr. 13, 2022) 3, 4, 5, 6

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........................................................18

*Tavernetti v. Superior Court*,
22 Cal. 3d 187 (1978) ........................................................15

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) ........................................................18

**U.S. Constitution**

Article III........................................................19, 20

**Federal Statutes**

18 U.S.C.
§ 2511(2)(d) ........................................................18
§ 3127(3)........................................................13
§ 3127(4) ........................................................13

Electronic Communications Privacy Act of 1986
§ 101, Pub. L. No. 99–508, 100 Stat 1848 (1986) .......... 13

Pen Register Act .......... 12

Title III of the Omnibus Crime Control and Safe Street Act of 1968, Pub. L. No. 90-351, 82 Stat. 197 (1968) .......... *passim*

USA Patriot Act of 2001, Pub. L. No. 107–56
§ 216, 115 Stat. 272 (2001) .......... 12, 13, 14, 16

**California Statutes**

Civil Code
§ 1694.2(b)(1) .......... 5
§ 2981 *et seq.* .......... 5
§ 2982(r) .......... 5
Automobile Sales Finance Act .......... 5

Code of Civil Procedure
§ 1295(b) .......... 4, 5

Penal Code
§ 4 .......... 15
§ 631 .......... 10
§ 631(a) .......... 14
§ 632 .......... 18
§ 632.7 .......... 14, 18
§ 638.50 .......... 12, 14
§ 638.50(b) .......... *passim*
§ 638.50(c) .......... *passim*
§ 638.51 .......... *passim*
§ 638.52 .......... 12
§ 680.2(a) .......... 4
California Invasion of Privacy Act .......... *passim*

**Federal Rules**

C.D. Cal. L.R. 11-3.1.1 .......... 5

S.D. Cal. Civil Rule 5.1.a .......... 5

**State Rules**

California Rule of Court
Rule 2.104 ....................................................................................5
Rule 8.204(b)(4)..............................................................................5

**Other Authorities**

147 Cong. Rec. H7159-03, H7165, H7166, H7197, 2001 WL 1266413 (Oct. 23, 2001) (Rep. Sensenbrenner) ..........................................13

147 Cong. Rec. S10990-02, S11000, S11005, S11055, 2001 WL 1297566 (Oct. 25, 2001) (Sen. Leahy) ..............................................13

H.R. 2975, 107th Cong. (2001).....................................................13

H.R. 3162 .......................................................................................13

House Report No. 107-236(I), at *60 (Oct. 11, 2001). House Report No. 107-236(I) .......................................................................13

Ira S. Rubenstein, *Privacy Localism*, 93 Wash. L. Rev. 1961, 2032 & n. 427 (2018)............................................................................12

S. 1510, 107th Cong. (2001)..........................................................13

S. Freiwald, *Uncertain Privacy: Communication Attributes After the Digital Telephony Act*, 69 S. Cal. L. Review 949, 985 (1996).........................13

S. Rep. No. 90-1097, at 98 (1968), 1968 WL 4956, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2187 (Apr. 29, 1968) ............................................12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. ARGUMENT

### A. The Motion to Compel Arbitration Should Be Denied.

#### 1. Applicable Standard

"To form a contract under California ... law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023). "The burden is on the party seeking arbitration to show notice and assent." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023).

"[A] webpage must take steps 'to ***capture the user's attention*** and secure [his or] her assent [to the terms at issue].'" *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (emphasis added) (quotation omitted).

"''To be conspicuous, [the] notice 'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.''" *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025) (citation omitted). "For a hyperlink to be reasonably conspicuous, it must be denoted by design elements tailored to notify the reasonably prudent internet user of its presence." *Id.* at 1156. "The '***context of the transaction***,' as well as the 'traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design,' inform" that analysis. *Id.* at 1155 (emphasis added) (quotation omitted). "The nature of the service or goods offered and the visual aspects of every page of a multi-page transaction should be ***considered together***." *Id.* (emphasis added) (quotation omitted).

#### 2. Defendant Has Provided No Evidence that Plaintiff Saw or Read Its Privacy Policy During Plaintiff's Visit to Its Website.

Contrary to Defendant's position, there is no evidence in the record showing that Plaintiff received actual notice of the Privacy Policy on the website at: https://www.sacsuperstore.com (the "Website") during her December 2024 visit.

First, Plaintiff did not receive actual notice of the Privacy Policy (containing an arbitration provision) attached as Exhibit A to the Declaration of Melody Cooke (Doc. 18-1) because Plaintiff never saw or read it ever. (Rodriguez Decl. ¶¶ 3-4.)

Second, although Defendant contends that the FAC alleges that Plaintiff "reviewed the Privacy Policy and its terms," (Def.'s Mem. at 7:22), Defendant has misconstrued the FAC's allegations. For example, although Defendant relies upon paragraph 1 of the FAC, which alleges Defendant's "'bait and switch' scheme," (Def.'s Mem. at 7:23-24), that allegation is intended to serve as a generalized indictment of Defendant's practices in general. Indeed, paragraph 1 makes no specific reference to Plaintiff, but rather refers instead to "***individuals*** seeking to purchase or service a vehicle," and similarly references "assur[ances] [to] ***them***," *i.e.*, individuals seeking to purchase or service a vehicle. (FAC ¶ 1) (emphasis added).

Although Defendant also relies upon paragraph 79 of the FAC, (Def.'s Mem. at 7:24), that paragraph once again makes reference to "Defendant's 'bait and switch' scheme—luring ***visitors*** to its Website by falsely promising that it will safeguard their privacy while secretly partnering with notorious data brokers … to secretly track each visitor and sell their private information to the highest bidders…." (FAC ¶ 79) (emphasis added). Notably, ***paragraph 79 does not allege that Plaintiff was personally lured to visit its Website via the false promise contained in its Privacy Policy***.

Finally, Defendant has misconstrued paragraph 122 of the FAC, which alleges that "Plaintiff had an objectively reasonable expectation of privacy surrounding her private communications and personal information on the Website based on Defendant's promise that it would protect Plaintiff's privacy, as well as state criminal and civil laws designed to protect individual privacy." Paragraph 122 was merely intended to convey that Defendant's privacy-related "promise" was giving the impression to its Website users (especially those who actually read the Privacy Policy) that it was behaving as though it was complying with privacy-related laws (even though in reality it was not). Put differently, Defendant made it appear to a reasonably prudent Internet user that it

was complying with federal or state privacy laws even though it was not doing so. Indeed, even the existence of the cookie banner itself gave the misleading impression that Defendant was complying with applicable privacy laws. This is why the remainder of paragraph 122 expressly refers to "state criminal and civil laws designed to protect individual privacy." But, just because Defendant was giving that impression to Internet users who actually read its Privacy Policy is not equivalent to alleging that Plaintiff personally saw and read the Privacy Policy during her visit.

"Plaintiff's role as a tester does not alone establish actual notice." *Sanchez v. Maggy London Int'l Ltd.*, 2025 WL 3097931, at *4 (S.D. Cal. Nov. 6, 2025).

"[W]here, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the . . . agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).

**3. Defendant Has Failed to Satisfy Its Burden of Showing Inquiry Notice.**

Although Defendant relies upon its cookie banner to support its position that all users of the Website were put on inquiry notice regarding its online Privacy Policy, (Def.'s Mem. at 2:20-27), Defendant's position should be treated as unpersuasive.

First, the cookie banner cited by Defendant is a browsewrap form of electronic agreement as Defendant itself implicitly acknowledges. (Def.'s Mem. at 7:7-17.) "A '*browsewrap*' agreement is one in which an internet user accepts a website's terms of use merely by browsing the site." *Sellers v. Just Answer LLC*, 73 Cal. App. 5th 444, 463 (2021), *rev. denied*, No. S273056 (Apr. 13, 2022) (quotation omitted) (emphasis in original)); *id.* at 470 (stating that in browsewrap agreement, "the website provider assumes assent is given by mere use of the website"). "'The defining feature of browsewrap agreements is that the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists." *Nguyen*, 763 F.3d at 1176 (citation omitted).

"[A] browsewrap agreement . . . in which the website provider assumes assent is

given by mere use of the website, based exclusively on the existence of a hyperlink that takes the consumer to the applicable set of contract terms—is not sufficient to bind the consumer." *Sellers*, 73 Cal. App. 5th at 470 (citations omitted).

Here, the cookie banner displays a mere browsewrap agreement because it is intended to allow Website visitors to continue to use the Website without visiting the webpage hosting the Privacy Policy or even knowing that such webpage exists. The cookie banner states in relevant part:

> "By continuing to use this site, you agree to our **Privacy Policy**, which includes an **Arbitration Provision**, and details the categories of personal information we collect, the purposes for which the information is used, and how to exercise your California privacy rights."

(Ferrell Decl. ¶ 2 & Ex. 1) (emphasis in original). And, the Website is navigable regardless of whether the user clicks on either the "Allow all cookies" or "Deny marketing cookies" buttons within such cookie banner. (Ferrell Decl. ¶ 3.) In other words, ***the cookie banner's textual disclosure statement does not allow the Website user to manifest assent to the Privacy Policy by clicking any button within such cookie banner at all***. The cookie banner merely states that the visitor "agree[s]" to such Privacy Policy merely "[b]y continuing to use this site…."

Second, the crucial textual disclosure statement set forth above is inconspicuous because: (1) the single textual disclosure statement about the Privacy Policy is buried amongst five different lengthy sentences totaling an astonishingly lengthy 181 words; and (2) all five sentences including the crucial textual disclosure statement are in 10 point type size, which is small. (Ferrell Decl. ¶ 4.)

The Court can and should use legislative determinations as a reference point for the legibility of the textual disclosure statement under review here. *See, e.g.*, Cal. Penal Code § 680.2(a) (requiring rights of sexual assault victims card "in at least 12-point font"); Cal. Civ. Proc. Code § 1295(b) (requiring "at least 10-point ***bold*** red type" for "[a]ny contract for medical services which contains a provision for arbitration of any

dispute as to professional negligence of a health care provider") (emphasis added); Cal. Civ. Code § 2982(r) (requiring a notice in a contract subject to the Automobile Sales Finance Act, Cal. Civ. Code § 2981 *et seq.*, to contain a notice with "text in at least 10-point ***bold*** type") (emphasis added); Cal. Civ. Code § 1694.2(b)(1) (requiring "[e]very dating service contract" to contain "a conspicuous statement in a size equal to at least 10-point ***boldface*** type") (emphasis added).

Notably, this Court's Local Rules impose a 14 point type size for all papers using a proportionally spaced font. (C.D. Cal. L.R. 11-3.1.1.)

Similarly, the Southern District of California's Local Rules impose a minimum 14 point type size for printed text. (S.D. Cal. Civil Rule 5.1.a.)

In addition, the Judicial Council of California requires 13 point typeface in the California Court of Appeal. (Rule of Court 8.204(b)(4).) As for California trial court papers, California Rule of Court 2.104 provides, "Unless otherwise specified in these rules, all papers filed must be prepared using a font size not smaller than 12 points."

Third, although the hyperlink named "Privacy Policy" has an underline beneath it, which Defendant presumably intended to connote the existence of a hyperlink, such underline is in the color black. (Ferrell Decl. Ex. 1.) Notably, Defendant has failed to cite any case authority within the Ninth Circuit (or any other jurisdiction) indicating that the color black indicates the existence of a hyperlink. Indeed, *Sellers* held, "In the computing world, a hyperlink is a word, phrase, or image—typically underlined or ***in blue font***—that the user can click on to jump to a new document or a new section within the current document." *Sellers*, 73 Cal. App. 5th at 452 n.2 (emphasis added). The reference to "blue font" in *Sellers* is significant. Indeed, in *Sellers*, the Court of Appeal noted that the online merchant's "hyperlink to the terms of service is underlined, but it is not set apart in any other way that may draw the attention of the consumer, such as with ***blue text*** or capital letters." *Id.* at 481 (emphasis added). Thus, merely underlining a hyperlink is not, alone, conspicuous to a reasonably prudent computer user according to *Sellers*.

Similarly, the Ninth Circuit has recognized that the color blue is associated with hyperlinks in color-contrasting text. *Nguyen*, 763 F.3d at 1178 (recognizing significance of hyperlink that is "underlined" in "***blue, contrasting text***," coupled together with other indicia) (emphasis added) (quotation omitted); *Chabolla*, 129 F.4th at 1156 ("In *Berman* and *Oberstein*, we indicated that the use of a ***blue font*** can be reasonably conspicuous.") (emphasis added) (citing *Berman*, 30 F.4th at 857; *Oberstein*, 60 F.4th at 516); *Chabolla*, 129 F.4th at 1168 ("The notice is even more conspicuous than the screen in *Patrick* because it has blue, not green, hyperlinks….").

Indeed, the Ninth Circuit has recognized that a "bright blue font" is sufficiently color-contrasting. *Oberstein*, 60 F.4th at 516 ("The "Terms of Use" hyperlink is written in ***bright blue font***, distinguishing it from the surrounding text.") (emphasis added); *Morrison v. Yippee Entertainment, Inc.*, 2025 WL 2389424, at *1 (9th Cir. Aug. 18, 2025) ("Here, the hyperlink appeared in ***bright blue font*** against a clean white background that stood out from the surrounding text to indicate it was clickable.") (emphasis added); *see also Singh v. Adobe Inc.*, 2025 WL 2197142, at *5 (finding reasonable conspicuous notice because "the Terms of Use hyperlink is in ***bright blue***") (emphasis added). Here, the "Privacy Policy" hyperlink is not even in the color blue at all.

**4. The "Context of the Transaction" Factor Supports Plaintiff's Position.**

Defendant's analysis completely ignores a "critical" factor that federal courts within the Ninth Circuit are required to consider, *i.e.*, the "context of the transaction". *Berman*, 30 F.4th at 866 (quoting *Sellers*, 73 Cal. App. 5th at 477, for its recognition that "context of the transaction" is "critical" factor in evaluating contours of reasonably conspicuous notice). As the California Court of Appeal recently explained, "An online purchase of merchandise does not necessarily give rise to a consumer expectation of an ongoing relationship governed by extensive contractual terms." *Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943, 956 (2025), *as modified* (Aug. 27, 2025).

Here, there was no online transaction at all resulting in the purchase of anything.

Indeed, Defendant strongly implies that the Website does not allow any "direct purchases" to be made via the Website. (Def's Mem. at 4:13-14.) Given these circumstances, a reasonably prudent Internet user would not expect an ongoing relationship with the Website governed by extensive contractual terms.

#### 5. Assuming *Arguendo* that a Valid Privacy Policy Is Otherwise Enforceable Against Plaintiff, Defendant Waived Its Right To Do So.

Assuming *arguendo* that a valid Privacy Policy is otherwise enforceable against Plaintiff (which is disputed), Defendant waived its right to do so.

In light of *Morgan v. Sundance, Inc.*, 596 U.S. 411, 416-19 (2022), the party opposing arbitration need not demonstrate prejudice. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). Rather, "the party asserting waiver must demonstrate: (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." *Id.*

It is beyond dispute that Defendant had knowledge of an existing right to compel arbitration of Plaintiff's claims dating back even before the commencement of the instant action. On April 9, 2025, Plaintiff sent a pre-filing letter to Defendant via FedEx to its dealership address. (Ferrell Decl. ¶ 5 & Ex. 1.) Given the broad scope of the Privacy Policy applying to any dispute regarding any usage of the Website, Defendant surely knew that it had a right to compel arbitration of Plaintiff's CIPA-related claims upon receipt of such pre-filing letter (assuming, of course, that its Privacy Policy was enforceable). On July 28, 2025, Defendant was served with process. (Doc. 1; Page ID #21-#22.)

Defendant has engaged in intentional acts inconsistent with its arbitration right. After filing its Notice of Removal, on September 15, 2025, Defendant filed its Motion to Dismiss seeking a dismissal of the original Complaint with prejudice. (Doc. 9.) "Obviously, '[s]eeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum.'" *Armstrong*, 59 F.4th at 1015 (quoting *Newirth by and through Newirth v. Aegis Senior Communities*,

*LLC*, 931 F.3d 935, 941 (9th Cir. 2019)).

**B. The FAC Alleges a Violation of Section 638.51 of the Penal Code.**

**1. Numerous Federal District Courts Have Recognized that Similar Third-Party Software Technology on Websites Is Either a "Pen Register" or a "Trap and Trace Device".**

In recent years, there are currently at least ***eighteen*** different federal district court decisions that have comprehensively explained that third-party tracking software like what is alleged in the FAC can constitute either a pen register or a trap and trace device under § 638.51 of the Penal Code. *See, e.g.*, *Casillas v. Six Flags Enter. Corp.*, - F. Supp. 3d -, 2025 WL 3684543, at *8-*9 (C.D. Cal. Dec. 15, 2025) (Marshall, J.); *Wright v. Truecare Prop. Holdings, LLC*, 2025 WL 3248749, at *4-*5 (S.D. Cal. Nov. 21, 2025); *Camplisson v. Adidas America, Inc.*, - F. Supp. 3d -, 2025 WL 3228949, at *7-*8 (S.D. Cal. Nov. 18, 2025); *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *4-*9 (N.D. Cal. Oct. 9, 2025); *Deivaprakash v. Condé Nast Digital*, - F. Supp. 3d -, 2025 WL 2541952, at *2-*5 (N.D. Cal. Sept. 4, 2025); *Garon v. Keleops USA, Inc.*, 2025 WL 2522374, at *3-*7 (N.D. Cal. Sept. 2, 2025); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *4-*8, *11-*12 (N.D. Cal. Aug. 29, 2025); *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1151-55 (N.D. Cal. Aug. 6, 2025); *Riganian v. Liveramp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092-94 (N.D. Cal. 2025); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *11-*12 (N.D. Cal July 14, 2025); *Heiting v. FKA Distributing Co. LLC*, 2025 WL 1430663, at *2 (C.D. Cal. May 15, 2025) (Vera, J.); *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *6-*7 (C.D. Cal. Apr. 3, 2025) (Castillo, Mag. J.); *Lesh v. Cable News Network, Inc.*, 2025 WL 563358, at *3-*7 (S.D.N.Y. Feb. 20, 2025); *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *11-*12 (S.D. Cal. Feb. 13, 2025); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 929-30 (C.D. Cal. 2025) (Klausner, J.); *Mirmalek v. Los Angeles Times Comms. LLC*, 2024 WL 5102709, at *3-*5 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928-33 (N.D. Cal. 2024); *Moody v. C2 Educ. Systems Inc.*, 742 F. Supp. 3d

1072, 1076 (C.D. Cal. 2024) (Klausner, J.); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

Although Defendant cites several California trial court rulings, (Def.'s Mem. at 14:22; 15:23-16:2; 16:6-22; 17:6-7), those orders are not only not precedential of California law, such rulings also provide no guidance. *Neary v. Regents of the University of California*, 3 Cal.4th 273, 282 (1992) ("[T]he Court of Appeal decision incorrectly suggests that a trial court judgment provides guidance to other courts and litigants. Not so.").

**2. The Website's Spyware Qualifies as a "Device or Process" Because It Constitutes "Software that Identifies Consumers, Gathers Data, and Correlates that Data."**

*Greenley*, *supra*, explained, "Today, pen registers take the form of software." 684 F. Supp. 3d at 1050. In support, *Greenley* stated:

> "[T]he Court cannot ignore the expansive language in the California Legislature's chosen definition. The definition is specific as to the type of data a pen register collects—'dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted,' but ***it is vague and inclusive as to the form of the collection tool***—'a device or process.' *See* Cal. Penal Code § [6]38.50(b). ***This indicates courts should focus less on the form of the data collector and more on the result***."

*Id.* (emphasis added); *Garon*, 2025 WL 2522374, at *4 ("The statutory language 'indicates courts should focus less on the form of the data collector and more on the result.'") (quoting *Greenley*, 684 F. Supp. 3d at 1050).

*Greenley* added:

> "[T]he Court applies the plain meaning of a 'process' to the statute. A process can take many forms. ***Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'***…***Thus, the Court rejects the contention that a private company's surreptitiously***

***embedded software installed in a telephone cannot constitute a 'pen register.'***" *Id*. (emphasis added). Six other federal court decisions expressly agree with *Greenley* that software can be a "process" if it identifies consumers, gathers data, and correlates that data. *Wright*, 2025 WL 3248749, at *4; *Garon*, 2025 WL 2522374, at *5; *Lesh*, 2025 WL 563358, at *3; *Zarif*, 2025 WL 486317, at *12; *Mirmalek*, 2024 WL 5102709, at *3; *Shah*, 754 F. Supp. 3d at 928.

That is precisely what the FAC in the instant action alleges. (FAC ¶¶ 2, 4, 10-70, 75-76, 79-82, 87.) The FAC alleges that third party spyware on the Website engages in unique "fingerprinting" to de-anonymize visitors to the Website.[1] (FAC ¶¶ 57, 69, 75, 77, 80.) Indeed, ***Defendant's Privacy Policy admits to engaging in "fingerprinting" of Website visitors***. (FAC ¶ 69.) Thus, the FAC alleges that users are tracked while visiting the Website, which can include when a user views the page, page interactions, and, of course, the identification of Website visitors.

The Court can and should also infer from the FAC's allegations about the installation of tracking code on Plaintiff's Internet browser that the FAC's allegations allege that the Website's spyware can geolocate[2] users of the Website who are from California as reflected by such users' IP addresses. (FAC ¶¶ 39-40, 48, 61, 64-65, 87, 120.) For example, the FAC expressly identifies a particular data broker, PubMatic,

---

[1] Defendant contends that the allegations regarding Plaintiff's computer expert's investigation of the Website on April 15, 2025, are irrelevant to Plaintiff's action because Plaintiff's visit to the Website in December 2024 preceded such expert's investigation by five months. (Def.'s Mem. at 9:11-13); (FAC ¶¶ 11, 71). Not so. It is reasonable to infer that all or at least most of the third party tracking software detected by such computer expert was operating on the Website at the time of Plaintiff's visit because of the relatively short duration of time between December 2024 and April 15, 2025. *Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir. 2009) ("we must draw inferences in the light most favorable to the plaintiff") (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

[2] As noted by *Greenley*, "courts have found that … the geolocation of the communicating parties are not the 'contents' of a communication under Section 631." *Greenley*, 684 F. Supp. 3d at 1051 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (finding that mere geolocation data is not the "contents" of a communication under the federal Wiretap Act). *Greenley* involved, *inter alia*, the collection of geolocation data by website data collectors. 684 F. Supp. 3d at 1037.

whose software is embedded onto the Website, ***which is known to collect precise geolocation data***. (FAC ¶ 39.) What can be gleaned from the FAC is that such specific spyware gathers visitor information about their devices including the IP address to determine other information such as geolocation data in order to segment users for targeted advertising. Thus, the FAC alleges substantial "downstream consequences" arising from Defendant's capturing of the IP address of Plaintiff's computerized device while visiting the Website. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021).

Thus, the Website's spyware alleged in the FAC qualifies as "device or process" within the meaning of subdivision (c) of section 638.50 of the Penal Code because it constitutes "software that identifies consumers, gathers, data, and correlates that data." *Greenley*, 684 F. Supp. 3d at 1050.

In addition, the Website's software is a "device" because "in order for software to work, it must be run on some kind of computing device. It is artificial to claim that software must be viewed in isolation from the computing device on which it runs and with which it is inseparable in regard to the challenged conduct." *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023).

**3. The IP Addresses Collected by the Website's Spyware Qualify as "Addressing Information."**

"Data capable of being associated with a user's identity falls within the statutory definition of addressing information." *Wright*, 2025 WL 3248749, at *4. "As the Ninth Circuit held, 'IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.''" *Mirmalek*, 2024 WL 5102709, at *4 (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008); *see also Shah*, 754 F. Supp. 3d at 929 (holding that "the IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information.") (citing *In re Zynga Privacy Litig.*, 750 F.3d at 1108); *see also Lesh*, 2025 WL 563358, at *4 ("the IP addresses collected by the Trackers qualify as 'addressing

information' under the statute [Penal Code § 638.50]"). In *Lesh*, the federal court noted, "An IP address contains information related to geographical location of a device's state, city, and zip code." *Id.*

**4. IP Addresses Are "Transmitted by an Instrument or Facility From Which a Wire or Electronic Communication Is Transmitted."**

Defendant implies that pen registers/trap and trace devices under California law are limited to "telephone surveillance to record incoming and outgoing phone numbers from a tapped line." (Def.'s Mem. at 15:12-13.) But, as the Court recently recognized, the plain language of California's statutes defining "[p]en register" and "[t]rap and trace device" refers to and includes "electronic communication". (Cal. Penal Code § 638.50(b) & (c); *Six Flags*, 2025 WL 3684543, at *8).

As *Lesh* recognized, "IP addresses are 'transmitted by an instrument or facility from which a wire or electronic communication is transmitted.'" *Lesh*, 2025 WL 563358, at *4 (quoting Penal Code § 638.50); *see also Shah*, 754 F. Supp. 3d at 928-29. Notably, *Lesh* rejected construing section 638.50 as narrowly limited to only the capture of telephone information. *Lesh*, 2025 WL 563358, at *4; *Shah*, 754 F. Supp. 3d at 930 ("Section 638.52, however, merely lists requirements relating to a particular type of pen register: one that is installed on a telephone line.").[3] *Lesh* concluded, "In short, the plain text of Section 638.50 clearly does not limit the application of pen registers to telephones." *Lesh*, 2025 WL 563358, at *5. *Lesh* is persuasive. *See also Riganian*, 791 F. Supp. 3d at 1093 ("if the drafters of Section 638.50 intended for 'pen register' to be

---

[3] The federal Pen Register Act and CIPA's pen register and trap and trace device provisions are so similar because the Pen Register Act sets a "floor," *i.e.*, a minimum standard that states can exceed with more stricter privacy laws, but they cannot enact "less restrictive legislation" as confirmed by the legislative history of Title III of the Omnibus Crime Control and Safe Street Act of 1968, Pub. L. No. 90-351, 82 Stat. 197 (1968) ("Wiretap Act"). Ira S. Rubenstein, *Privacy Localism*, 93 Wash. L. Rev. 1961, 2032 & n.427 (2018) (citing S. Rep. No. 90-1097, at 98 (1968), 1968 WL 4956, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2187 (Apr. 29, 1968)). Thus, because the federal USA Patriot Act of 2001 ("Patriot Act"), Pub. L. No. 107–56, § 216, 115 Stat. 272 (2001) amended the "pen register" and "trap and trace device" definitions to cover software processes that collect information, California could not enact "less restrictive legislation" on this same topic and avoid being preempted by the federal provisions.

limited to telephone technologies, they knew how to say so") and *Motorola*, 2025 WL 1939957, at *11 (same).

In 1986, Congress amended the Wiretap Act via the federal Electronic Communications Privacy Act of 1986 ("ECPA"), § 101, Pub. L. No. 99–508, 100 Stat 1848 (1986) to define a "pen register" and "trap and trace device," but "it did not limit the pen register to something that acquired information about a telephone…," S. Freiwald, *Uncertain Privacy: Communication Attributes After the Digital Telephony Act*, 69 S. Cal. L. Review 949, 985 (1996). And, the Patriot Act, which was enacted on October 26, 2001, further modified the "pen register" and "trap and trace" definitions to cover software processes that collect information including Internet traffic. 147 Cong. Rec. S10990-02, S11000, S11006, S11055, 2001 WL 1297566 (Oct. 25, 2001) (Sen. Leahy); 147 Cong. Rec. H7159-03, H7196, H7197, 2001 WL 1266413 (Oct. 23, 2001) (Rep. Sensenbrenner).

Both the Patriot Act's amendment to the "pen register" definition in 18 U.S.C. § 3127(3) and the definition of "Pen register" in Cal. Penal Code § 638.50(b) both added the words "or process" after "device". Similarly, both the Patriot Act's amendment to the "trap and trace device" definition in 18 U.S.C. § 3127(4) and the definition of "Trap and trace device" in Cal. Penal Code § 638.50(c) both added the words "or process" after "device". The Patriot Act's legislative history indicates that the "pen register" definition and the "trap and trace device" definition were both amended "to include an intangible 'process' (such as a software routine) which collects the same information as a physical device." 147 Cong. Rec. H7159-03, H7165, 2001 WL 1266413 (Oct. 23, 2001) (Rep. Sensenbrenner).[4] California's definitions of pen register and trap and trace device are virtually identical in content to the federal definitions amended via the Patriot

[4] *See also* House Report No. 107-236(I), at *60 (Oct. 11, 2001). House Report No. 107-236(I) was to accompany H.R. 2975, a related bill, which was passed by the House of Representatives on October 12, 2001. Instead of a conference with the Senate on H.R. 2975 (to reconcile differences with S. 1510), the House passed H.R. 3162 on October 24, 2001.

Act. The California Legislature enacted sections 638.50 and 638.51 into law in 2015, approximately 14 years after the Patriot Act was enacted into law.

"Courts in the District have emphasized that the inclusion of the term 'process' in the definition of a pen register was intended to extend the statute's reach beyond physical telephone hardware to include software tools that carry out materially similar functions." *Fregosa*, 2025 WL 2886399, at *3. "Nothing in the definition ties the statute to legacy technologies, refers to 'persons,' or excludes software processes embedded in websites. See Cal. Penal Code §§ 638.50, 638.51. On the contrary, the Legislature's choice of the phrase 'device or process' reflects an intentional technology-neutral approach, ensuring the statute reaches novel surveillance methods as they emerged. Courts interpreting CIPA have consistently treated the broad statutory language as intentional and significant." *Id.* at *5. "This definition has been understood to be intentionally broad and not limited to specific technology, as 'all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA.'" *Camplisson*, 2025 WL 3228949, at *7 (quoting *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022)).

"If the drafters of Section 638.50 had intended for 'pen register' to be limited to telephone technologies, they knew how to do so—as evidenced by other sections of CIPA where they imposed such limitations." *Motorola Mobility LLC*, 2025 WL 1939957, at *11 (citing Cal. Penal Code §§ 631(a), 632.7), *quoted in Garon*, 2025 WL 2522374, at *4.

Thus, the plain language of subdivisions (b) and (c) of section 638.50 reflect an intent of the California Legislature to adopt Congress's expansion of the definitions of pen register and trap and trace device to include computerized devices or software processes connected to the Internet.

**5. The Court Must Follow the California Supreme Court's Statutory Interpretation of CIPA that Gives Greater Protection to Privacy Interests.**

The Court is required to follow *Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002),[5] which endorsed a statutory interpretation of CIPA that "better fulfills the legislative purpose of [CIPA] by giving greater protection to privacy interests." *Id.* at 775; *Fregosa*, 2025 WL 2886399, at *5; *Haleon*, 2025 WL 2494368, at *12; *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1153; *Shah*, 754 F. Supp. 3d at 930; *Matera v. Google Inc.*, 2016 WL 200619, at *19 (N.D. Cal. Aug. 12, 2016) (Koh, J.); *In re Google Inc.*, 2013 WL 5423918, at *21 ("the California Supreme Court's repeated finding that the California legislature intended for CIPA to establish broad privacy protections supports an expansive reading of the statute") (citing *Flanagan*, *Ribas*, and *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 194 (1978)).

**6. The Common Law Rule of Lenity Does Not Apply Here.**

Although Defendant relies on the common law rule of lenity to question whether section 638.51 applies to "internet communications," (Def.'s Mem. at 16:23-17:7), Plaintiff disagrees. *Fregosa*, 2025 WL 2886399, at *9 ("[T]he statute contains no grievous ambiguity: its language, structure, history, and purpose are sufficiently clear, and they leave no need for the Court to merely speculate about its applicability. The statutory text is deliberately expansive, designed to encompass new technologies and apply to conduct like that alleged here."); *Deivaprakash*, 2025 WL 2541952, at *4; *Garon*, 2025 WL 2522374, at *6; *Riganian*, 791 F. Supp. 3d at 1094. Based on Penal Code § 4, "although true ambiguities are resolved in a defendant's favor, ***an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent***." *People v. Avery*, 27 Cal.4th 49, 58 (2002) (emphasis added) ("The rule [of lenity] applies only if the court can do no more than ***guess*** what the legislative body intended; there must be an ***egregious ambiguity*** and uncertainty to justify invoking the rule.") (emphasis added). "In other words, 'the rule

[5] "When interpreting state law, federal courts are bound by decisions of the state's highest court." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 820 (9th Cir. 2018) (quoting *Ariz. Elec. Power Co-Op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995)).

of lenity is a tie-breaking principle, of relevance when ' 'two reasonable interpretations of the same provision stand in relative equipoise ....' ' ' " *People v. Braden*, 14 Cal.5th 791, 824 (2023).

Plaintiff submits that a contrary legislative intent can be "fairly discern[ed]" here. As mentioned above, the Patriot Act's legislative history strongly indicates that the trap and trace device definition was intended to cover software processes that collect information including Internet traffic. And, as mentioned above, the "pen register" and "trap and trace device" definitions in section 638.50(b) & (c) of the Penal Code were copied from the federal law definition of such terms. Thus, this Court can do far more than "guess" what the Legislature intended to apply section 638.51 to "internet communications." The parties' positions are not in "relative equipoise."

**7. Defendant's Argument that Section 638.51 of the Penal Code Should Be Interpreted to Exclude Defendant's Third-Party Cookies Because Such Cookies Copy the Content of the Communications Between the Website and Plaintiff and Other Users Is Wrong.**

Defendant argues that Plaintiff's claim predicated upon a violation of section 638.51 of the Penal Code cannot state a viable cause of action because: (1) the statutory definition of both "pen register" and "trap and trace device" exclude the contents of a communication in section 638.50(b) & (c) of the Penal Code; and (2) the FAC implies that such contents of a communication were recorded. (Def.'s Mem. at 14:16-15:4.) Such precise argument has been recently rejected by at least two federal district courts. *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1154-55 ("[T]he better interpretation of Section 638.51 is that it defines a pen register as any device that 'records dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted,' but not a device that records only the contents of communications.'"); *Haleon*, 2025 WL 2494368, at *12 ("given CIPA's purpose to protect Californians' privacy, it seems very unlikely that the state Legislature meant to permit the installation and implementation of

pen registers 'so long as those devices also record the contents of third party's communications'"). Such decisions are persuasive.

Although Defendant relies upon *Mitchener v. Curiositystream, Inc.*, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) and *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025), both decisions are unpersuasive because they relied solely upon a certain California trial court order that provides no guidance. *Neary*, 3 Cal.4th at 282. Moreover, both decisions were decided before *Haleon* and so they had no opportunity to consider its reasoning. As for *Mitchener*, it was decided on the same day as *In re Meta Pixel Tax Filing Cases* so it had no opportunity to consider the reasoning of the latter decision.

**8. The FAC Alleges that Third-Party Cookies Were Placed on Plaintiff's Browser or Device.**

Defendant contends that the FAC alleges that Defendant "placed tools on its own website and ***not on her device or browser***." (Def.'s Mem. at 15:16-17) (emphasis in original). Defendant's contention is blatantly inaccurate. (FAC ¶¶ 11-13, 15, 53, 56-58, 76-77, 79-80, 102, 104, 111.) Defendant conveniently ignores that the FAC alleges that Defendant's Privacy Policy freely admits to using "cookies and other similar technologies" via its Website and defines "cookies" as "small pieces of text used to store information ***on web browsers***." (FAC ¶ 69) (emphasis added). And, the FAC alleges that Nexxen, one of the data brokers whose software operates on the Website, acknowledges in its own privacy policy that cookie data is "stored on the user's device." (FAC ¶ 22.)

**9. There Is No Party Exception Under Section 638.51.**

Contrary to Defendant's argument, (Def.'s Mem. at 15:5-18), no party exception exists under section 638.51. Notably, the Legislature knows how to reference a party exception when it wants to. *People v. Superior Court*, 70 Cal. 2d 123, 131 & n.7 (1969).

Indeed, the party exception has been rejected for other CIPA sections including

sections 632 and 632.7 of the California Penal Code. *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202-03 (2021) (rejecting party exemption for section 632.7); *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1393 (2011) (rejecting party exemption for section 632); *Warden v. Kahn*, 99 Cal. App. 3d 805, 812-13 (1979) (same); *Forest E. Olson, Inc. v. Superior Court*, 63 Cal. App. 3d 188, 191 (1976) (same).

**C. Plaintiff's Wiretap Act Claim Is Plausibly Alleged.**

Plaintiff's claim under the Wiretap Act is plausibly alleged. The Court should apply the reasoning in *Riganian*, *supra*, as to why the Wiretap Act's crime-tort exception applies to the allegations of the FAC. *Riganian*, 2025 WL 2021802, at *9-*10. Defendant acted with a tortious and unlawful purpose when it enabled and permitted third-party data brokers (and other third parties) to intercept Plaintiff's electronic communications through the use of either third-party cookies or tracking pixels embedded on the Website. Under 18 U.S.C. § 2511(2)(d), even if one party to a communication consents, the Wiretap Act is violated if the interception is made for the purpose of committing any criminal or tortious act. Courts have recognized that surreptitious data collection in violation of privacy rights can satisfy this "tortious purpose" standard. In *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021), the Ninth Circuit held that Facebook's interception of browsing activity via tracking technologies could constitute a violation of the Wiretap Act where the conduct was undertaken for the purpose of violating users' privacy rights, such as by committing the tort of intrusion upon seclusion. Here, Defendant's facilitation of a third-party's interception—despite promising to protect user privacy—was done with the purpose of enabling commercial exploitation of user data in violation of California common law privacy rights, including intrusion upon seclusion. This renders the interception unlawful under § 2511(2)(d).

**D. Plaintiff's Intrusion Upon Seclusion Claim Is Plausibly Alleged.**

The Court should rely upon the persuasive reasoning of *Haleon* explaining why the intrusion upon seclusion claim was not subject to dismissal. 2025 WL 2494368, at

*8-*9; *see also Six Flags*, 2025 WL 3684543, at *6.

Defendant's reliance upon *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1-*2 (C.D. Cal. Apr. 4, 2025) and *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023),[6] is misplaced because they failed to address or distinguish *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) ("***foreseeability of monitoring is insufficient to infer consent***") (emphasis added); *In re Google*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) ("That the person communicating knows that the interceptor has the *capacity* to monitor the communication is insufficient to establish implied consent.") (emphasis in original); *Shah*, 754 F. Supp. 3d at 932 ("A user who consents to disclose their IP address to Fandom as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers."). Thus, *Autotrader.com* and *Sterling Jewelers* conflict with Ninth Circuit precedent. The Court in those decisions was bound to follow *United States v. Staves*.

And, *Autotrader.com* failed to recognize that "'[c]onsent is … generally limited to the specific conduct authorized.'" *Greenley*, 684 F. Supp. 3d at 1048 (quoting *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021)); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014) (no consent to data being used for targeted advertising where users consented to its use for "data analysis"); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 824 (N.D. Cal. 2020) (consent to data collection does not extend to data disclosure).

Although Defendant contends that the FAC must allege the collection of "sensitive and confidential information" in order to warrant privacy protection, (Def.'s Mem. at 12:6-13:4), it misapprehends both federal and California privacy law. Ninth Circuit precedent recognizes that the right to privacy dating back to the common law encompasses "the individual's control of information concerning his or her person" such

---

[6] Defendant conveniently omits that *Sterling Jewelers* stated that with respect to the court's Article III standing analysis, "the Court's analysis does not depend on Plaintiff's status as a tester[.]" *Id.* at *4 n.3.

as "an individual's likes, dislikes, interests, and habits" ***without imposing a confidential information requirement***. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598; *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017). In *In re Facebook, Inc. Internet Tracking Litig.*, *supra*, the Ninth Circuit held that allegations of data collection performed "in order to receive and compile [the plaintiffs'] personally identifiable browsing history" "no matter how sensitive or personal" constituted sufficient allegations of injury for purposes of Article III standing." 956 F.3d at 598, *quoted in Deivaprakash*, 2025 WL 2541952, at *4 n.4; *Camplisson*, 2025 WL 3228949, at *6 ("There is no requirement that … the information collected [via an online tracker] be sensitive…."); *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001) (holding that Wiretap Act "does not distinguish based on the content of the intercepted conversations").

And, in *Sanders v. American Broadcasting Companies, Inc.*, 20 Cal. 4th 907 (1999), the California Supreme Court recognized that "a person may reasonably expect privacy against the electronic recording of a communication, ***even though he or she had no reasonable expectation as to the confidentiality of the communication's contents***." *Id.* at 915 (emphasis added).

Dated: December 19, 2025

PACIFIC TRIAL ATTORNEYS, P.C.

By: */s/ Scott J. Ferrell*
Scott. J. Ferrell
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,995 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 19, 2025

*/s/ Scott J. Ferrell*
Scott J. Ferrell