**KLEIN THOMAS LEE & FRESARD**
Gregory P. Gilmer (SBN: 212067)
Email: greg.gilmer@kleinthomaslaw.com
Kristyn Wong (SBN: 346644)
Email: kristyn.wong@kleinthomaslaw.com
1920 Main Street, Suite 230
Irvine, CA 92614
Office: (949) 676-4570

Thomas L. Azar, Jr. (to be admitted *pro hac vice*)
Email: tom.azar@kleinthomaslaw.com
Sarah Molina (to be admitted *pro hac vice*)
Email: sarah.molina@kleinthomaslaw.com
100 N. Broadway, Suite 1600
St. Louis, MO 63102
Office: (314) 888-2970

*Attorney for Defendant SACRAMENTO CDJR, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

REBEKA RODRIGUEZ, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

SACRAMENTO CDJR LLC,

Defendant.

**CASE NO.: 2:25-cv-08089 DMG (Ex)**

*Assigned to: Dolly M. Gee*
*Magistrate Judge: Charles F. Eick*

**SACRAMENTO CDJR LLC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Action Filed: July 15, 2025

**DATE:** January 9, 2026
**TIME:** 9:30 a.m.
**JUDGE:** Hon. Dolly M. Gee
**COURTROOM:** 8C

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ..................................................................... ii

I. INTRODUCTION ........................................................................... 1

II. THE COURT SHOULD COMPEL ARBITRATION ....................................... 1

A. Arbitration Should Be Compelled Based On Actual Notice ................. 3

B. Rodriguez's Inquiry Notice Arguments Also Fail. ............................... 5

C. Rodriguez's "Waiver" Argument Fails. ................................................ 6

III. ALTERNATIVELY, THE COURT SHOULD DISMISS THE FAC .............. 8

A. All Claims Fail Because They Are Not Plausible. ............................... 8

B. No Viable Claim For Intrusion Upon Seclusion (Count III). ................ 9

C. No Plausible "Trap and Trace" Violation Alleged (Count II). ........... 10

1. No Applicability To Devices That Record Or Decode "The Contents Of The Communication." ............................................ 10

2. Even If Its Statutory Language Could Simply Be Ignored, The "Trap And Trace" Statute Should Be Interpreted Not To Disrupt Internet Commerce And Consistent With The Rule Of Lenity. ........................................................................ 12

3. The Lack Of Facts Pleaded To Support A "Tap" On Rodriguez's Own Browser/Device. ............................................ 13

D. The Federal Wiretap Claim Fails (Count I). ....................................... 13

IV. CONCLUSION ............................................................................. 15

CERTIFICATE OF COMPLIANCE ........................................................ 16

CERTIFICATE OF ELECTRONIC FILING ............................................ 17

PROOF OF SERVICE .......................................... **Error! Bookmark not defined.**

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*B.K. v. Eisenhower Med. Ctr.*, 721 F.Supp.3d 1056 (C.D.Cal. 2024) .......... 14

*Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023) .......... 7

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) .......... 7

*Byars v. Hot Topic, Inc.*, 656 F.Supp.3d 1051 (C.D.Cal. 2023) .......... 8

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022) .......... 7

*Carroll (and Rodriguez) v. Gen. Mills, Inc.*, 2023 WL 6373868 (C.D.Cal. 2023) .......... 5

*Carroll (and Rodriguez) v. J.M. Smucker Co.*, 2023 WL 4053796 (N.D.Cal. 2023) .......... 5

*Casillas v. Six Flags Entmt. Corp.*, – F.Supp.3d – , 2025 WL 3684543 (C.D.Cal. 2025) .......... 9

*Doe v. Talkiatry Mgmt. Servs., LLC*, 2025 WL 3190813 (C.D.Cal. 2025) .......... 14

*Even Zohar Constr. & Remodeling, Inc. v. Bellaire Townhouses, LLC*, 61 Cal.4th 830 (2015) .......... 12

*Flanagan v. Flanagan*, 27 Cal.4th 766 (2002) .......... 12

*Gabrielli v. Haleon US Inc.*, 2025 WL 2494368 (N.D.Cal. 2025) .......... 9, 11

*Heiting v. HP Inc.*, 2025 Cal. Super. LEXIS 60774 (2025) .......... 11

*In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 14

*In re Meta Pixel Tax Filing Cases*, 793 F.Supp.3d 1147 (N.D.Cal. 2025) .......... 11, 12

*Kay v. Ehrler*, 499 U.S. 432 (1991) .......... 6

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D.Cal. 2025) ........ 11

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) ........ 7

*Miranda v. Anchondo*,
684 F.3d 844 (9th Cir. 2012) ........ 12

*Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, *5 (N.D.Cal. 2025) ........ 11, 15

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F.Supp.3d 1072 (W.D.Wash. 2024) ........ 14

*Panameno v. Charter Commc'ns, LLC*,
2025 WL 3482621 (C.D.Cal. 2025) ........ 3

*Pena v. GameStop, Inc.*,
670 F.Supp.3d 1112 (S.D.Cal. 2023) ........ 14

*Penn v. Experian Info. Sol., Inc.*,
2025 WL 1427440 (C.D.Cal. 2025) ........ 7

*Platt v. Sodexo, S.A.*,
148 F.4th 709 (9th Cir. 2025) ........ 6

*Price v. Headspace, Inc.*,
2025 WL 1237977 (Cal. Super. 2025) ........ 11

*Riganian v. LiveRamp Holdings, Inc.*,
791 F.Supp.3d 1075 (N.D.Cal. 2025) ........ 13, 14

*Ringgold Corp. v. Worrall*,
880 F.2d 1138 (9th Cir. 1989) ........ 6

*Rodriguez v. Aquatic Sales Solutions LLC*,
735 F.Supp.3d 1208 (C.D.Cal. 2024) ........ 5

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D.Cal. 2025) ........ 5

*Rodriguez v. Brushfire Records*,
2025 WL 3692144 (C.D.Cal. 2025) ........ 5

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D.Cal. 2025) ........ 5

*Rodriguez v. Delta T LLC*,
2023 WL 9419152 (C.D.Cal. 2023) ........ 5

*Rodriguez v. Ford Motor Co.*,
2024 WL 4957566 (S.D.Cal. 2024) ........ 5

*Rodriguez v. Harley-Davidson Motor Co., Inc.*,
2024 WL 3032945 (C.D.Cal. 2024) ........ 5

*Rodriguez v. Hershey Co.*,
2023 WL 6798506 (S.D.Cal. 2023) ........................................................... 5

*Rosenaur v. Scherer*,
88 Cal.App.4th 260 (2001) ........................................................... 6

*Sussman v. Am. Brod. Cos.*,
186 F.3d 1200 (9th Cir. 1999) ........................................................... 14

*Tawam (and Rodriguez) v. Feld Entmnt. Inc.*,
684 F.Supp.3d 1056 (S.D.Cal. 2023) ........................................................... 5

*U.S. v. Drew*,
259 F.R.D. 449 (C.D.Cal. 2009) ........................................................... 6

*United Specialty Ins. Co. v. Clean and Sober Media LLC*,
2021 WL 3623300 (C.D.Cal. 2021) ........................................................... 7

**STATUTES**

Cal. Penal Code §§ 638.50, 638.51 ........................................................... 10, 11, 12

Wiretap Act, 18 U.S.C. § 2511 ........................................................... 13, 14

## I. INTRODUCTION

Plaintiff Rebeka Rodriguez tries to avoid arbitration by disclaiming the few facts she has pleaded about her own experiences using Sacramento CDJR's website as just "generalized indictment[s] of Defendant's practices in general," and arguing her references to "Plaintiff" in the FAC should be read to refer to some other generic "internet user."[1] Even if this could allow Rodriguez to avoid arbitration (and it does not), it confirms she has failed to plead the facts required for any plausible claim.

## II. THE COURT SHOULD COMPEL ARBITRATION

Rodriguez acknowledges that (1) either "actual or constructive notice of the agreement" to arbitrate requires enforcement of an arbitration clause, and that (2) in determining whether sufficient notice exists, the entire "context of the transaction" must be considered. Pl. Reply, p. 1 (quotations and emphasis omitted). Here, her own averments and the parties' submitted evidence show:

- Sacramento CDJR's website displays a pop-up when a visitor arrives that states "By continuing to use this site, you agree to our **Privacy Policy**, which includes an **Arbitration Provision**, and details the categories of personal information we collect," shown below.




[1] *See* Memorandum of Points and Authorities in Support of Plaintiffs' Response in Opposition to Sacramento CDJR LLC's Motion to Compel Arbitration, Or in the Alternative, to Dismiss Plaintiff's First Amended Class Action Complaint ("Pl. Opp."), ECF #19, pp. 2-3.

*See* ECF #18, p. 2; *see also* Declaration of Scott J. Ferrell ("Ferrell Decl."), ECF #19-2, ¶ 2 & Ex. 1.

- Rodriguez works as a website "'tester' to ensure companies abide by the privacy obligations imposed by California law." FAC, ¶ 71.
- Rodriguez pleads that Sacramento CDJR "lures" visitors to its website based on statements in the site's Privacy Policy. *Id.* at ¶ 1 (citing and quoting Privacy Policy).
- Rodriguez pleads, and bases her own legal claims on, an allegation that the website's alleged collection of visitor data was "highly offensive" and a "'bait and switch' scheme" that "breaches trust and expectations" because of purported "false[] promis[es]" in the Privacy Policy. *Id.* at ¶ 79.
- Rodriquez also pleads, and bases her own legal claims on, an averment that "Plaintiff had an objectively reasonable expectation of privacy … on the Website based on Defendant's promise [in the Privacy Policy] that it would protect Plaintiff's privacy." *Id.* at ¶ 122.
- While Rodriguez now proffers a contrary declaration stating she has "never personally seen or read" the website's Privacy Policy, there is nothing in her declaration even suggesting she somehow avoided seeing the pop-up that explicitly warns visitors about the Privacy Policy and its arbitration agreement. *See* Declaration of Rebeka Rodriguez ("Rodriguez Decl."), ECF #19-1, ¶ 4.
- The Privacy Policy linked in the website pop-up: (1) begins with a bold and large-font statement that **"NOTICE: This Privacy Policy Contains an Agreement to Arbitrate Disputes and a Class Action Waiver"** with a click-button to the agreement; (2) provides that "using our Services" or "visiting our Site" constitutes consent to arbitration of "any controversy, claim, action, proceeding, demand, or dispute arising out of or related to your visit to the Sites"; and (3) adopts the AAA Consumer Arbitration

Rules and delegates enforceability to the arbitrator. *See* ECF #18, pp. 5-6; *see also* ECF #18-1, pp. 1, 16.

Given this, Rodriguez's arguments against arbitration (Pl. Opp., pp. 1-8) fail.

**A. <u>Arbitration Should Be Compelled Based On Actual Notice.</u>**

Rodriguez argues she had no "actual notice" of the arbitration agreement by (1) pointing to the declaration she has submitted; (2) arguing contrary allegations in her own FAC have all been "misconstrued"; and (3) citing case law suggesting that "Plaintiff's role as a tester does not alone establish actual notice." *Id.* at pp. 1-3. None of this allows her to avoid arbitration.

***First,*** Rodriguez's declaration comes nowhere close to negating – or really even challenging – her notice of the arbitration agreement. The website at issue here does ***not*** simply present some vague link or cryptic reference to a document with an arbitration agreement buried within it. Rather, as Rodriguez agrees, it immediately confronts visitors with a pop-up explicitly warning they must "agree to our **<u>Privacy Policy</u>**, which includes an **Arbitration Provision**" to use the site, along with a hyperlink to the full policy. *See* ECF #18, p. 2; *see also* Ferrell Decl., ECF #19-2, ¶ 2 & Ex. 1. Rodriguez does not even suggest she somehow missed this pop-up when she visited the site. *See*, *generally*, Rodriguez Decl. Instead, her carefully worded declaration just contends she "did not click on any hyperlink" and thus has "never personally seen or read such 'Privacy Policy.'" *Id.* at ¶¶ 3, 4.

In other words, Rodriguez's declaration does not create any dispute as to her notice of the arbitration agreement's ***existence*** – rather, she is simply trying to escape the effect of that agreement by claiming she did not read its terms. But, this is not a viable argument, as a multitude of courts have explained. *See, e.g.*, *Panameno v. Charter Commc'ns, LLC*, 2025 WL 3482621, *3 (C.D.Cal. 2025) ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause … The fact that [a party] chose not to read or take the time to understand these provisions is legally irrelevant." (alteration in original, quotations

omitted)). Since actual notice is shown, arbitration should be compelled.

***Second,*** Rodriguez's argument that Sacramento CDJR is "miscontru[ing]" her pleaded allegations fails at every level. She asserts claims (like Count III, for intrusion upon seclusion) that hinge on ***her*** having a reasonable expectation of privacy. *See, e.g.*, FAC, ¶¶ 118-27. To support this required element, and others, she pleads that Sacramento CDJR's website makes various "promises" in its Privacy Policy. *See id.* at ¶¶ 1, 59-69. She pleads that "***Plaintiff*** reasonably expected" certain privacy protection based on the "cookie banner" – *i.e.*, the pop-up describing cookie usage, linking to the Privacy Policy, and explicitly warning it contains an "Arbitration Provision." *Id.* at ¶ 123 (emphasis added). She also lodges a variety of other allegations all based on the notion she has a viable claim because of affirmative representations in the pop-up and/or the Privacy Policy it links to. *See, e.g.*, *id.* at ¶ 79 ("Defendant explicitly promised to protect Plaintiff's privacy"); *id.* at ¶ 85 ("This conduct is especially offensive when coupled with false privacy promises that Defendant will protect and respect user privacy."); *id.* at ¶ 86 (website "explicitly assured Plaintiff that Plaintiff's privacy would be respected"). Indeed, even in opposing Sacramento CDJR's alternative motion to dismiss, Rodriguez argues the dismissal of ***her own claims*** for lack of a reasonable expectation of privacy would be improper because the alleged violation occurred "despite [Defendant] ***promising*** to protect user privacy." *See* Pl. Opp., p. 18 (emphasis added).

At the very least, these allegations confirm Rodriguez was aware of the pop-up explicitly warning her about the arbitration clause in the Privacy Policy. Thus, even if she were a first-time user of the internet (rather than a professional "tester" of website privacy), there can be no reasonable dispute she had actual notice.

***Third,*** while Rodriguez argues her profession as a website privacy "tester" does not "alone" establish actual notice (*see id.* at p. 3), this is certainly a factor relevant to the "context of the transaction" that must be analyzed in ruling on a motion to compel arbitration. After all, if a plaintiff is filing dozens of website

privacy lawsuits (like Rodriguez[2]), and routinely litigating arbitration issues in them, it is difficult to imagine circumstances where a clear arbitration agreement disclosure – "By continuing to use this site, you agree to our **Privacy Policy**, which includes an **Arbitration Provision**" – somehow goes unnoticed.

**B. Rodriguez's Inquiry Notice Arguments Also Fail.**

Even if compelling arbitration based on "actual notice" were not proper (and, here, it is not just proper but required), the alternative "inquiry notice" standard is clearly satisfied, and Rodriguez' contrary arguments fail. *See* Pl. Opp., pp. 3-6.

Rodriguez baldly asserts that the Sacramento CDJR website "allow[s] Website visitors to continue to use the Website without vising the webpage hosting the Privacy Policy ***or even knowing that such webpage exists***." *Id.* at p. 4 (emphasis added). But, even her own counsel acknowledges the pop-up containing an explicit warning about the arbitration agreement ("By continuing to use this site, you agree to our **Privacy Policy**, which includes an **Arbitration Provision**") and a link to the full terms of that Privacy Policy. *See* Ferrell Decl., ¶ 2 & Ex. 1. Rodriguez does ***not*** claim she somehow avoided seeing the pop-up – she just declares she did not actually click on or read the full policy. *See*, *generally*, Rodriguez Decl.

Rodriguez also tries to manufacture some argument based on the notion a user can continue navigating the website without clicking either the "Deny marketing cookies" or "Allow all cookies" buttons in the pop-up (*i.e.*, just ignoring the screen-

---

[2]*See, e.g.*, *Rodriguez v. Brushfire Records*, 2025 WL 3692144 (C.D.Cal. 2025); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113 (S.D.Cal. 2025); *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787 (C.D.Cal. 2025); *Rodriguez v. Ford Motor Co.*, 2024 WL 4957566 (S.D.Cal. 2024); *Rodriguez v. Aquatic Sales Solutions LLC*, 735 F.Supp.3d 1208 (C.D.Cal. 2024); *Rodriguez v. Harley-Davidson Motor Co., Inc.*, 2024 WL 3032945 (C.D.Cal. 2024); *Rodriguez v. Delta T LLC*, 2023 WL 9419152 (C.D.Cal. 2023); *Rodriguez v. Hershey Co.*, 2023 WL 6798506 (S.D.Cal. 2023); *Carroll (and Rodriguez) v. Gen. Mills, Inc.*, 2023 WL 6373868 (C.D.Cal. 2023); *Tawam (and Rodriguez) v. Feld Entmnt. Inc.*, 684 F.Supp.3d 1056 (S.D.Cal. 2023); *Carroll (and Rodriguez) v. J.M. Smucker Co.*, 2023 WL 4053796 (N.D.Cal. 2023); *see also* ECF #18, p. 1 fn.1 (collecting additional exemplar cases).

wide pop-up banner and allowing it to keep blocking a sizeable portion of the page). *See* Pl. Opp., p. 4. But, there is no requirement that consent be manifested in a particular way. *See, e.g.*, *U.S. v. Drew*, 259 F.R.D. 449, 461-62 (C.D.Cal. 2009); *see also Platt v. Sodexo, S.A.*, 148 F.4th 709, 719 (9th Cir. 2025) (consent to arbitration can be given by conduct based on an objective standard, but finding that standard was not met where 'continued use' language was "buried" in 100+ page agreement). Here, there is no dispute about consent: Rodriguez, her "expert" agent, and now her attorney (also her agent under California law[3]) have all continued to use the website despite viewing a pop-up explaining that "By continuing to use this site, you agree to our **Privacy Policy**, which includes an **Arbitration Provision**." *See* FAC, ¶¶ 11, 56; *see also* Ferrell Decl., ¶¶ 1-4.

Beyond this, Rodriguez tries to imply some rule that only a "blue font" can suffice for a reasonably conspicuous notice, or that some online purchase transaction is required. *See* Pl. Opp., pp. 4-8. While courts obviously look to the font, bolding, positioning, and other context in assessing conspicuousness, none of Rodriguez's cited cases even suggest only blue will do, or that some online purchase is needed before an arbitration provision will be enforced. She also cites no case suggesting that anything like the pop-up here is somehow insufficient. *Id.*

**C. Rodriguez's "Waiver" Argument Fails.**

The Privacy Policy's arbitration agreement expressly delegates gateway issues such as validity and enforceability to the arbitrator for decision. *See* ECF # 18-1, p. 16 ("The arbitrator will decide if any part [of this arbitration agreement] is invalid or cannot be enforced."). It also adopts the AAA's Consumer Arbitration Rules, which courts agree constitutes a "clear and unmistakable" delegation of all gateway issues

[3] *See, e.g.*, *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141-42 (9th Cir. 1989) (clients of an attorney "have notice of all facts known to their lawyer-agent"); *Rosenaur v. Scherer*, 88 Cal.App.4th 260, 283 (2001) ("attorneys are agents of their client"); *see also Kay v. Ehrler*, 499 U.S. 432, 435-36 (1991) ("the word 'attorney' assumes an agency relationship").

to the arbitrator. *Id.*; *see also*, *e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015). "To adequately challenge the validity of [a] delegation provision, the resisting party 'must specifically reference the delegation provision and make arguments challenging it.'" *Penn v. Experian Info. Sol., Inc.*, 2025 WL 1427440, *2 (C.D.Cal. 2025) (quoting *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023)). Rodriguez mounts no such challenge here. *See*, *generally*, Pl. Opp. Accordingly, the delegation provision must be enforced and Rodriguez must make her waiver or other enforceability arguments to the arbitrator. *See, e.g.*, *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1033-34 (9th Cir. 2022) (affirming district court's decision to compel arbitration where gateway issues were delegated to the arbitrator and plaintiff only raised challenge to arbitration agreement as a whole); *Brennan*, 796 F.3d at 1133 (same).

Furthermore, and in any event, "[a] party seeking to prove waiver of the right to compel arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; ***and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.*"** *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (emphasis added, quotation omitted); *see also United Specialty Ins. Co. v. Clean and Sober Media LLC*, 2021 WL 3623300, *3 (C.D.Cal. 2021) (similar). Here, Rodriguez just misleadingly pretends the required "prejudice" element does not exist at all, and offers nothing to even suggest it could be established. *See* Pl. Opp., pp. 7-8. Furthermore, on the first two elements for finding waiver, all she points to are actions ***she*** took (sending a "pre-filing letter," serving process, *etc.*) and Sacramento CDJR's prior motion to dismiss – which was never ruled on or even responded to, and directed to the original complaint which lacked the current allegations about her reliance on the website's Privacy Policy. *Id.* Thus, even if waiver were an issue to be decided by this Court (and it is not), Rodriguez comes nowhere close to establishing it.

## III. ALTERNATIVELY, THE COURT SHOULD DISMISS THE FAC

### A. All Claims Fail Because They Are Not Plausible.

In its motion, Sacramento CDJR challenged all of Rodriguez's claims based on a lack of pleaded facts about ***her*** use of the website – *e.g.*, what ***she*** saw during her visit, which pages ***she*** viewed, what features ***she*** interacted with, why ***she*** believes there was some "secret spyware" on the site during that visit, *etc.* *See* ECF #18, pp. 9-10. Rodriguez not only offers no argument or response to this challenge, she is now actively trying to ***recant*** the few facts she has pleaded. Indeed, she argues the various allegations about what "Plaintiff reasonably expected" (*see* FAC, ¶ 123) and her own visit and reliance on the website's Privacy Policy and its promises to respect her privacy (*see, e.g.*, *id.* at ¶¶ 79, 86) were really just "generalized indictment[s] of Defendant's practices in general"; that various allegations referring to "Plaintiff" should instead be understood as referring to "a reasonably prudent Internet user"; and that none of her pleaded factual allegations actually speak to what "Plaintiff personally saw and read." Pl. Opp., pp. 2-3.

As one court in this District observed: "[a]t the end of the day, *Twomby-Iqbal* pleading standards might be distilled to a single proposition: if a litigant pleads at such a high level of generality that it is possible to copy and paste a complaint word-for-word against a new defendant (at least after the unnumbered 'introduction' section, where Plaintiff's Counsel has written the URL of the defendant of the day and referred to it as 'the Website' so that he need not make other alteration to the rest of the complaint), then almost by definition he is pleading without the factual specificity necessary to make a claim for relief." *Byars v. Hot Topic, Inc.*, 656 F.Supp.3d 1051, 1060-61 (C.D.Cal. 2023). And, plausibility is further strained where – as here – the plaintiff is a "serial litigant" bringing numerous "cookie cutter" lawsuits based on her status as a self-appointed "tester." *Id.* at 1059-61.

Since Rodriguez pleads essentially no facts about her own experiences or the basis for her claims, and is now actively disclaiming the few facts actually pleaded,

all of the claims asserted in the FAC should be dismissed.

**B. <u>No Viable Claim For Intrusion Upon Seclusion (Count III).</u>**

In its motion, Sacramento CDJR moved to dismiss Rodriguez's intrusion upon seclusion claim based on four separate deficiencies: (1) her failure to plausibly plead the "expectation of seclusion" required for such a claim given her status as a "tester"; (2) her failure to plead facts plausibly showing she had an actual expectation of privacy given the clear disclosures in the Privacy Policy; (3) her failure to identify "specific personal information she disclosed that implicates a protectable privacy interest"; and (4) her failure to plead facts showing a "highly offensive" or "egregious breach of social norms." *See* ECF #18, pp. 10-14 (quotations omitted).

Rodriguez's response (Pl. Opp., pp. 18-20) does not really address any of these arguments. She begins with unexplained citations to *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, **8-9 (N.D.Cal. 2025) and *Casillas v. Six Flags Entmt. Corp.*, – F.Supp.3d – , 2025 WL 3684543, *6 (C.D.Cal. 2025). But, neither addresses claims by a professional "tester" like Rodriguez. And, the holdings in each appear based on the particular facts alleged in that case – *e.g.*, the plaintiff in *Casillas* pleaded facts showing the defendant "surreptitiously" collected and tracked some "search queries, interests, and preferences" that made resolving the "highly offensive" question difficult "at the pleading stage." 2025 WL 3684543, at *6. Rodriguez, by contrast, pleads allegations about a ***disclosed*** Privacy Policy explaining various types of information ***would*** be disclosed. *See, e.g.*, FAC, ¶¶ 59-69.

Rodriguez also tries to distinguish Sacramento CDJR's cited cases by arguing "foreseeability" of a possible disclosure does not equate to "consent," and that "confidentiality" of information is not required for an intrusion upon seclusion claim. *See* Pl. Opp., pp. 19-20. But, neither point has any bearing here. Sacramento CDJR has moved to dismiss based on Rodriguez's failure to plead facts plausibly showing the "expectation of seclusion" and "highly offensive" elements for an intrusion upon seclusion claim – not based on some argument about foreseeability or confidentiality.

Rodriguez's failure to respond to the arguments Sacramento CDJR actually made in its motion should be deemed a concession dismissal is required.

**C. <u>No Plausible "Trap and Trace" Violation Alleged (Count II).</u>**

On Rodriguez's "Trap and Trace" (Cal. Penal Code § 638.51) claim in Count II, Sacramento CDJR presented four arguments for dismissal: (1) the statute does not apply to devices that record or decode "the contents of the communication"; (2) Rodriguez cannot plead a violation based on allegations Sacramento CDJR placed a tracking device on its own website, and needed to plead facts showing some "tap" on her own device/browser; (3) even if Rodriguez had pleaded only that her IP address was captured, finding that violates § 638.51 would lead to absurd results and render every website a violation; and (4) the rule of lenity applies in construing the application of the statute if it is ambiguous. *See* ECF #18, pp. 14-17.

Rodriguez responds with a lengthy series of canned arguments that appear to have been taken from some other brief, addressing some other defendant's motion – *e.g.*, whether "spyware" is a "device or process," *etc.* *See* Pl. Opp., pp. 8-18. Her arguments actually addressing Sacramento CDJR's motion fail to save her claim.

***1. No Applicability To Devices That Record Or Decode "The Contents Of The Communication."***

As Sacramento CDJR explained in its opening brief, while § 638.51(a) prohibits the installation of a "trap and trace device" without a court order, the statute explicitly defines such a prohibited device as one that "captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, ***but not the contents of the communication***." Cal. Penal Code § 638.50(c) (emphasis added); *see also* ECF #18, pp. 14-15. Based on this clear statutory language, numerous courts have concluded devices alleged to be able to capture the contents of a communication fall outside the scope of the "trap

and trace device" definition.[4] And, that is obviously fatal here, as Rodriguez pleads the various pixels/cookies can and do collect the contents of communications, such as page visits, video views, "behavior like clicks," and browsing behavior, interests, and activities. *See, e.g.*, FAC, ¶¶ 23, 33, 42, 70. 80, 82.

Rodriguez attempts to counter by citing two cases: *In re Meta Pixel Tax Filing Cases*, 793 F.Supp.3d 1147, 1154-55 (N.D.Cal. 2025) and *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, *12 (N.D.Cal. 2025). *See* Pl. Opp., pp. 16-17. But, as an initial matter, neither case actually addresses the "trap and trace device" definition, which is the ***only*** part of the statute that Rodriguez is asserting a claim under. *See* FAC, ¶¶ 108-110; *see also In re Meta Pixel*, 793 F.Supp.3d at 1151-55 (analyzing only whether device constituted a "pen register," not a "trap and trace device"); *Gabrielli*, 2025 WL 2494368, at **11-12 (same).

More problematically, the analyses in both cases are founded on the notion that a court's perception of the CIPA's overall "legislative purpose" controls over

---

[4] *See, e.g.*, *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, *5 (N.D.Cal. 2025) (dismissing claim because "[b]y definition, a 'trap and trace device' captures identifying information ***about*** a communication '***but not the contents*** of a communication' (emphasis added, quotation omitted)); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, **4-5 (N.D.Cal. 2025) ("If Defendant … collects content information from [a] communication … then the … software is not a trap and trace device and § 638.50 does not apply."); *Heiting v. HP Inc.*, 2025 Cal. Super. LEXIS 60774, *8 (2025) ("The trap and trace statute prohibits the use of a device or process that does not discover the content of communications…"); *Price v. Headspace, Inc.*, 2025 WL 1237977, *3 (Cal. Super. 2025) ("[T]he crucial distinction from other devices is that … 'trap and trace devices' are designed to capture information ***about the communication***, but ***not the content of the communication*** itself. Indeed, other devices accomplish that, and a host of statutes and caselaw are directed at those other devices too. For purposes of Section 638.51, 'trap and trace devices' by definition are tools which provide information about the 'who,' when,' and 'where' of communications—but not the 'what" … To put this yet another way, if the device is capturing the content of the communications, it is definitionally not a trap and trace device. For this reason, the demurrer will be sustained." (emphasis in original)).

express statutory language stating that neither "pen registers" nor "trap and trace devices" include devices that can capture "the contents of the communication." *See, e.g.*, *In re Meta Pixel*, 793 F.Supp.3d at 1153-54. But, "statutory interpretation begins with the statutory text," and "[r]esorting to legislative history as an interpretive device is inappropriate if the statute is clear." *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012); *see also Even Zohar Constr. & Remodeling, Inc. v. Bellaire Townhouses, LLC*, 61 Cal.4th 830, 837-38 (2015) (statutory interpretation "begin[s] as always with the statute's actual words, the 'most reliable indicator' of legislative intent" (quotation omitted)). While some ambiguity might arguably be found in whether the California Legislature intended §§ 638.50(c) and 638.51(a) to apply to websites at all, there is simply no ambiguity in the phrase "but not the contents of the communication." The cases applying the actual statutory language have the better argument, and Count II should be dismissed.

***2. Even If Its Statutory Language Could Simply Be Ignored, The "Trap And Trace" Statute Should Be Interpreted Not To Disrupt Internet Commerce And Consistent With The Rule Of Lenity.***

Assuming legislative intent plays any role here at all (and given the clear language of the statute it does not), applying that intent is hardly the one-sided affair that Rodriguez tries to suggest. *See* Pl. Opp., pp. 14-16. Certainly, when the CIPA was enacted in 1967, protecting privacy was an important consideration. *See, e.g.*, *Flanagan v. Flanagan*, 27 Cal.4th 766, 768-69 (2002). But, California courts have rightly expressed concern about applying statutes aimed at curtailing pen registers and wiretaps in a way that would effectively apply to any website – even where (unlike here) the statutory language could at least arguably apply. *See* ECF #18, pp. 15-16 (collecting cases). Further, if the statutory language is so ambiguous that "not the contents of the communication" cannot be given its plain meaning, then that ambiguity would warrant applying the rule of lenity. *See id.* at pp. 16-17.

### ***3. The Lack Of Facts Pleaded To Support A "Tap" On Rodriguez's Own Browser/Device.***

While Rodriguez argues she has pleaded facts showing Sacramento CDJR placed tools on ***her own device/browser***, the portions of the FAC she cites do not actually contain such facts. *See* Pl. Opp., p. 17. She just points to things like her allegations about what the website's Privacy Policy says (FAC, ¶ 22), what her "computer expert" found during his own visit to the website several months later (*id.* at ¶¶ 11-13, 15), and generic assertions about how various online tools purportedly operate (*id.* at ¶¶ 53, 56-58, 76-77), as well as the allegations that she now argues were just "generalized indictment[s] of Defendant's practices in general" and not intended to describe her own experiences at all (*id.* at ¶¶ 79, 80). *See* Pl. Opp., p. 17; *see also id.* at pp. 2-3. The failure to plead actual facts about her own visit is fatal.

## D. <u>The Federal Wiretap Claim Fails (Count I).</u>

Sacramento CDJR moved to dismiss Rodriguez's federal Wiretap Act claim because the statute includes an express exemption for anyone who "is a party to the communication." *See* ECF #18, pp. 17-18 (quoting 18 U.S.C. § 2511(2)(d)).

Tellingly, Rodriguez's response relies entirely on two cases analyzing claims against a defendant who was ***not*** "a party to the communication," and ***not*** the owner/proprietor of the website in question, but rather a third-party data broker or other entity providing tools for use on websites. *See* Pl. Opp., p. 18. First, she points to *Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075 (N.D.Cal. 2025), where the plaintiff asserted a Wiretap Act claim against LiveRamp, "a registered 'data broker'" whose tracking tools were alleged to have been used on various third-party websites such as healthline.com, abcnews.go.com, and showtime.com. *Id.* at 1080, 1083. None of the owners of these websites were defendants in the case. *See*, *generally*, *id.* So, unsurprisingly, the Wiretap Act's exemption for "a party to the communication" is not even addressed in *Riganian*. *Id.* Instead, the court simply addressed LiveRamp's argument that the claim failed because "consent" had been

provided, and whether a "crime-tort" exception to consent applied. *Id.* at 1089-90.

Likewise, *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), involved claims against Facebook over its practice of "embedding third-party plug-ins on third-party web pages" which allegedly tracked users' activities even after they logged out of Facebook. *Id.* at 596. Nevertheless, Facebook tried to invoke the Wiretap Act's "party" exemption by arguing its plug-ins just "duplicated" the transmissions between the plaintiff's computer and the third-party websites. *Id.* at 607-08. But, the Ninth Circuit concluded that third-party entities which "duplicate transmissions between two parties are not parties to communications within the meaning of the Act." *Id.*

Rodriguez appears to cite *Riganian* to argue the "crime-tort" exception in 18 U.S.C. § 2511(2)(d) allows her sue Sacramento CDJR even though it is clearly a party to users' communications with its own website. *See* Pl. Opp., p. 18. But, that exception only applies if "the purpose of the interception—its intended use—was criminal or tortious." *Sussman v. Am. Brod. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999). And, as Sacramento CDJR explained in its opening brief, courts have consistently held the illegal or tortious conduct for such an exception ***cannot be the alleged wiretapping itself***. *See, e.g.*, *Pena v. GameStop, Inc.*, 670 F.Supp.3d 1112, 1119-20 (S.D.Cal. 2023).[5] Rodriguez does not even argue Sacramento CDJR

---

[5]*See also*, *e.g.*, *Doe v. Talkiatry Mgmt. Servs., LLC*, 2025 WL 3190813, **4-5 (C.D.Cal. 2025) (dismissing Wiretap Act claim because "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is ***independent*** of the intentional act of recording or interception itself," but plaintiff failed to do so (emphasis in original)); *B.K. v. Eisenhower Med. Ctr.*, 721 F.Supp.3d 1056, 1065 (C.D.Cal. 2024), *reconsideration denied*, 2024 WL 2037404, *3 (C.D.Cal. 2024) (dismissing Wiretap Act claim because "[w]hile Plaintiffs allege that Defendant engaged in the allegedly illegal interception of their and proposed class members' information 'for Defendant's commercial advantage,' Plaintiffs do not allege that this purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable."); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F.Supp.3d 1072, 1095-96 (W.D.Wash. 2024) (dismissing Wiretap Act claim because

engaged in any independent criminal or tortious conduct beyond the alleged wiretapping itself, much less cite pleaded facts showing this or showing any improper purpose. *See* Pl. Opp., p. 18. Thus, Rodriguez has effectively conceded her Wiretap Act claim in Count I must be dismissed.

## IV. CONCLUSION

For the reasons explained above and in Sacramento CDJR's prior brief, the Court should stay this case and compel arbitration or, in the alternative, dismiss the First Amended Class Action Complaint in its entirety and with prejudice.

Dated: December 23, 2025

**KLEIN THOMAS LEE & FRESARD**

By: /s/ *Kristyn Wong*
Gregory P. Gilmer
Kristyn Wong
Thomas L. Azar, Jr.
Sarah Molina
*Attorneys for Defendant*
*SACRAMENTO CDJR, LLC*

---

"Plaintiff fails to plead a tortious or criminal use of the acquired communications, separate from the recording, interception, or transmission"); *see also* ECF #18, p. 18 (collecting additional cases).

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for SACRAMENTO CDJR, LLC, certifies that this brief contains 4,917 words, which complies with the word limit of L.R. 11-6.1.

Dates: December 23, 2025 *<u>/s/ Kristyn Wong</u>*

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on **December 23, 2025**, a true and correct copy of the foregoing **SACRAMENTO CDJR LLC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT** was filed with the Clerk using the CM/ECF system, which will provide notice to the following counsel of record:

| | |
|---|---|
| Scott J. Ferrell, Esq.<br>Victoria C. Knowles, Esq.<br>PACIFIC TRIAL ATTORNEYS<br>A Professional Corporation<br>4100 Newport Place Drive, Ste. 800<br>Newport Beach, CA 92660 | Attorneys for Plaintiff<br>REBEKA RODRIGUEZ<br><br>Tel: (949) 706-6464<br>Fax: (949) 706-6469<br>Email: sferrell@pacifictrialattorneys.com<br>vknowles@pacifictrialattorneys.com |

*/s/ Kristyn Wong*
Kristyn Wong